**BANCO GUBERNAMENTAL DE FOMENTO PARA PUERTO RICO,** demandante y recurrido, *v.* **ABARCA WAREHOUSES CORP., SUCESORES DE ABARCA, INC.** y **OTROS,** demandados; **GIROD TRUST COMPANY, INC.,** interventora peticionaria.

*Números:* O-79-300      *Resueltos:* 17 de octubre de 1979
O-79-331
R-79-234

*Pedro J. Torres Marcano, Francisco Santiago Vela* y *Enrique N. Vela Colón*, abogados de la peticionaria Girod Trust Company, Inc.; *Quetglas, Subirá, Gaztambide & Arrillaga* y *José Antonio Tulla*, abogados de Puerto Rico Shipping Services, Inc.; *Luis E. López Correa* y *Carlos Santos Correa*, abogados del Banco Gubernamental de Fomento.

EL JUEZ ASOCIADO SEÑOR DÍAZ CRUZ emitió la opinión del Tribunal.

En edicto publicado conforme a ley el Alguacil del Tribunal Superior, Sala de San Juan, anunció subasta a efectuarse el 20 febrero, 1979 en la que se realizarían varios bienes de los demandados Abarca, entre ellos 1,506 acciones del capital corporativo de la Puerto Rico Dry Dock & Marine Terminals, Inc., para satisfacer al demandante Banco Gubernamental de Fomento una sentencia que sobrepasa los 2.5 millones de dólares. El acta de subasta, expedida el mismo día, refleja que por las referidas acciones la postura más alta fue de $25,000 originada por el Banco Gubernamental de Fomento en un 68%, y por First Pennsylvania Bank, N.A. en 32%. Narra el acta que "[l]a suma licitada por esta propiedad fue de $25,000. El Sr. Alberic Girod, en representación de Girod Trust Co., ofreció la suma de $25,001.00. No obstante no acreditó tener dicha suma en su poder en cheque certificado o dinero en efectivo y por tanto dicha oferta fue rechazada por el Alguacil suscribiente y se dio por aceptada la oferta de la parte demandante quien ofreció la suma de $25,000.00."

En escrito de intervención Girod reclamó para sí la adjudicación de las acciones como mejor postor y por resolución de 29 mayo, 1979 la Sala de instancia anuló la adjudicación de las acciones y ordenó nueva subasta para venta de las mismas. Concluyó el juzgador que la actuación del alguacil fue prematura al exigir de Girod prueba de que tenía en su poder el dinero de su oferta y que debió continuar la licitación, obligando al Banco de Fomento a participar en la puja aumentando su oferta. Contra esta resolución han recurrido a este Tribunal el Banco de Fomento demandante, y los interventores Girod y Puerto Rico Shipping Services, Inc., esta última cesionaria de una opción para adquirir las referidas acciones del Banco en caso de que las obtuviera en subasta. La decisión a que llegamos hace innecesario pasar sobre el derecho a intervenir que pueda tener Puerto Rico Shipping Services para proteger su expectativa en el resultado de la subasta. Consolidamos los tres recursos y ahora resolvemos a tenor de la Regla 50 de nuestro Reglamento.

La venta forzosa judicial carece de la base consensual del contrato de compra y venta definido en el Art. 1334 del Código Civil, 31 L.P.R.A. sec. 3741.([1]) La intervención del

---

([1])"El pensamiento del legislador en punto a la naturaleza de la adjudicación al rematante o adjudicatario es ver en ella una especie de compraventa, ya que a veces habla de 'venta' y de 'precio'. Guasp se opone a esta tesis, por entender que *falta el consentimiento* del dueño, pero como en definitiva, se produce una transmisión por precio, cabe asimilar en muchos aspectos este acto al contrato de compraventa, sin olvidar que dada la intervención de la justicia en esta realización de bienes ella participa del carácter de un acto estatal, circunstancia que hacen destacar los procesalistas.³" (Énfasis en el original.)

.   .   .   .   .   .   .   .

([3])"La sentencia de 9 de febrero de 1943 declara que la adquisición por vía de adjudicación en procedimiento judicial sumario, se produce en virtud de resolución judicial, bien sea doctrinalmente estimada ésta como un acto de subrogación en las facultades del propietario, bien como una expropiación del derecho de disposición que normalmente compete al dueño, bien como un caso de transmisión forzosa. Añade, que la regla 17ª del art. 131 de la Ley Hipotecaria inviste al Juez de la representación del dueño de los bienes a los efectos de la adjudicación aludida." Roca Sastre, *Derecho Hipotecario*, 6ta ed. (1968), T. 4, Vol. 2do, pág. 1062.

alguacil dirigiendo la subasta para la realización de los bienes, no es la de un contratante pactando libremente sobre algo que le pertenece, sino la de un funcionario del Estado cumpliendo el mandamiento de ejecución emitido por el tribunal. El alguacil no es mandatario del deudor cuyos bienes ejecuta, y sí el brazo eficaz de la justicia para que el crédito del ejecutante quede satisfecho. En el descargo de su deber ministerial debe ajustarse a las Reglas de Procedimiento Civil y en el caso por éstas imprevisto seguirá la norma que mejor garantice la corrección e integridad de la subasta. Bajo esta premisa se halla bien asentada en Puerto Rico la práctica de exigir al que gana la buena pro el importe total de su oferta en el acto mismo de la adjudicación en moneda de curso legal o cheque de gerente o letra bancaria con similar garantía.[2]

La venta judicial se rige por las Reglas de Procedimiento Civil. Su perfección no se produce hasta la adjudicación al mejor postor. *S. España, 22 marzo, 1954;* Castán Tobeñas, *Derecho Civil Español,* 9na ed. (1961), T. 4, pág. 90, esc. 1.

Provee el Art. 254 del Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1135:

"Si un comprador se negare a pagar el importe de su postura por bienes que se le adjudiquen en una subasta celebrada en cumplimiento de una orden de ejecución, el oficial podrá en cualquier tiempo vender otra vez la propiedad al mejor postor, y si resultare pérdida, dicho oficial podrá reclamar ante cualquier corte competente el importe de dicha pérdida al comprador que se hubiere negado a pagar como queda dicho."

A todas luces este artículo faculta al alguacil para promover otra subasta como medio de enfrentar la anomalía de un comprador a quien se le adjudica la buena pro y se niega a pagar el importe de su postura. No es éste necesariamente el único recurso del alguacil, quien también puede, como en este caso, tener por no hecha la oferta espuria y adjudicar los bienes al que le sigue en cuantía. La postura rechazada de

[2]La práctica ha sido reconocida en la Regla 51.8(d) de Procedimiento Civil de 1979.

Girod que excedía por sólo un dólar ($1.00) la de $25,000 del Banco de Fomento no era indicio de que una siguiente subasta mejoraría apreciablemente el precio de $25,000 y por el contrario dejaba abierta la posibilidad de un precio más bajo. Dentro de tales circunstancias actuó correctamente el alguacil en ejercicio de su potestad rechazando la postura vacía y aceptando la legítima. La subasta no puede abrirse a artificios, ni pueden tomarse éstos como razón para anularla y provocar una nueva, porque con ello se estaría premiando la conducta anómala. El Art. 254 citado deja al arbitrio del alguacil, en tal situación, la adjudicación de la subasta al postor que sigue en orden o proceder otra vez a la venta de la propiedad al mejor postor. La primera alternativa por él seguida está en armonía con la protección de todos los intereses envueltos en la subasta, que es de su responsabilidad.

El Art. 253, Código de Enjuiciamiento Civil, 32 L.P.R.A. sec. 1134 dispone que la venta judicial de bienes en cumplimiento de una orden de ejecución, deberá hacerse por subasta al mejor postor, y tendrá lugar entre las nueve de la mañana y las cinco de la tarde; y el Art. 255 autoriza al alguacil a rechazar, a su arbitrio, la postura subsiguiente de un comprador que se negare a pagar. La norma o reglas de procedimiento no pueden ser tan prolijas que anticipen una solución para toda situación que surja en una subasta y por tal razón al encomendar al alguacil su ordenada celebración, le permite cierto grado de discreción que supla la ausencia de detalle en la regla.(3) Esa discreción debió indicarle al alguacil que si Girod no tenía los $25,001 de su oferta, menos

---

(3)Sobre el particular nos expresamos así en *Meléndez* v. *Registrador,* 35 D.P.R. 878, 879 (1926):

". . . nuestra Legislatura al crear el cargo de márshal, al definir sus poderes y deberes, al fijar su responsabilidad para los litigantes y al prescribir el procedimiento a seguir al cumplir las sentencias y órdenes puestas en sus manos para su ejecución, parece que ha dejado muchas cuestiones de detalles a la sana discreción de este funcionario, para ser ejercida de acuerdo con la naturaleza del cargo confiádole y de la responsabilidad que sobre él recae y de conformidad con los principios generales del derecho."

tendría el importe mayor que podría alcanzar la continuada pugna con un demandante que estaba muy lejos de agotar el límite de su crédito por sentencia. El arbitrio del oficial bajo el Art. 255 para rechazar la postura subsiguiente de quien se niegue a pagar, es el mismo arbitrio para descubrir la vacuidad de la licitación en el momento en que se produce y negarle todo reconocimiento. Quien no tiene dinero a la mano, ningún derecho tiene a derrotar una postura legítima, y menos a desmantelar la subasta obligando a nuevo remate de los bienes. Semejante situación riñe con la solución rápida, justa y económica que persiguen las Reglas. El "mejor postor" con derecho a adjudicación de los bienes subastados a que se refiere el Art. 253 del Código de Enjuiciamiento Civil, ha de ser un licitador apto y cualificado para respaldar su oferta en el acto con su importe en dinero o letras de cambio, y actúa dentro de sus atribuciones el alguacil que exige del postor prueba de esa calidad en su oferta; y que de faltar la misma rehúsa reconocer la postura. En la subasta impugnada no se dio el caso del comprador que se niega a pagar previsto en el Art. 254 de Enjuiciamiento Civil, sino el de un postor no cualificado para pagar por lo que no se justificaba posponer la adjudicación de la buena pro para una segunda subasta.

*Se expedirá el auto de certiorari y la resolución revisada será anulada.*

El Juez Asociado Señor Negrón García no intervino.