*884 TEXTO COMPLETO DE LA RESOLUCIÓN
Leonardo Pórtela Torres nos pide por vía de certiorari que revisemos una resolución dictada por el Tribunal de Primera Instancia, que ordenó la venta de un inmueble sito en Dorado que al presente habita la recurrida con sus hijos menores, para que del importe de la venta se cobren pensiones alimentarias atrasadas. Por los fundamentos que discutiremos, se expide el recurso de certiorari solicitado y se confirma la resolución recurrida.
I
Leonardo Pórtela Torres y María I. Blanco Garrido se divorciaron el 23 de agosto de 2005. Procrearon tres hijos, que son menores de edad, cuya custodia fue asignada a la madre y cuya patria potestad es compartida.
Luego de transcurridos casi dos años, el 14 de mayo de 2007, el Tribunal de Primera Instancia fijó una pensión alimentaria mensual de $9,388.46. Por incumplimiento con los pagos de la pensión alimentaria, el 31 de enero de 2008, el Tribunal de Instancia ordenó el arresto y encarcelamiento del peticionario hasta tanto saldara dicha deuda. El peticionario saldó la deuda y recuperó su libertad, alegando que fue por la ayuda de su hermana y cuñado.
El 1 de diciembre de 2008, el Tribunal de Primera Instancia celebró una vista de seguimiento en la que dispuso, en lo pertinente, lo siguiente:
“En cuanto a la deuda, al mes de noviembre la misma asciende a $10,598.48. El mes de diciembre no ha vencido. El licenciado Iguina solicita un plan de pago, la licenciada Biaggi se opone.
El Tribunal concede hasta el miércoles, 3 de diciembre de 2008, a las 2:00 p.m., para pagar los $10,598.48, en la oficina de la licenciada Biaggi. De no pagarse en esa fecha, que se radique una moción con declaración jurada y se emitirá la orden de arresto. El día 5 vence el pago del mes de diciembre. Informa el licenciado Iguina que el señor Pórtela hizo un pago de $200 a través de ASUME. Habiéndose depositado en ASUME, el mismo será acreditado. Que se solicite un desglose de pagos para verificar que el pago ha entrado.
Se señala vista de seguimiento para el 30 de marzo de 2009, a las 10:00 a.m. En la vista ante el examinador el 25 de febrero, deberá verificar que se esté pagando la pensión. Si no ha pagado, que se suba a sala y se emitirá la orden de arresto. ”
Notificada esa Minuta, Pórtela Torres recurrió ante este Tribunal por vía del certiorari. Cuestionó la posposición de la celebración de vista sobre revisión de pensión alimentaria y la advertencia que le hiciera el foro primario sobre posible encarcelamiento sin el debido proceso de ley. [1] Un panel hermano expidió el referido recurso y dispuso lo siguiente:
*885 “Lo que es conforme al espíritu de la Ley para el Sustento de Menores, en este momento procesal, es que se celebre la vista en 25 de febrero de 2009, según lo dispuso el Tribunal. Si Pórtela Torres tuviese pensiones atrasadas a esa fecha, el Tribunal deberá considerar aparte el asunto. Deberá ponderar otras alternativas al encarcelamiento, como por ejemplo, el plan de pago que le propuso el alimentista o el embargo de sus bienes privativos. Deberá además posponer la consideración de posibles arrestos por desacato, —si es que fuere necesario como último recurso — , hasta que se verifique si ha habido cambios extraordinarios sustanciales en la situación económica de Pórtela Torres. Esa verificación deberá completarse no más tarde del 30 de marzo de 2009, que es la fecha señalada para la vista ante el Tribunal. La vista no deberá suspenderse si no es por acuerdo " de ambas partes o por una emergencia nacional. Así lo disponemos.”
En cumplimiento con la referida orden, el foro primario dispuso la venta de bienes muebles, [2] entre estos:
“Óleo firmado por Rubén Ríos de un paisaje sobre un platanal de estilo contemporáneo en marco de hilo y madera negra.
Serigrafía original pequeña de Francisco Rodón de una paloma, de aproximadamente seis pulgadas de ancho por seis pulgadas de alto.
Cuadro Oscar Durán - óleo- de Bodegón.
Serigrafía original de Francisco Rodón firmada “Flores para Gabriela” en marco grueso dorado, hilo y cristal.
Espejo veneziano grande
Alfombra turca
Cuadro Rodón - Pasionaria.
Serigrafía Roberto Moya - “Niño sentado”
Marco de cuadro Rodón
Marco de espejo 4x4 apxox. - madera “inlaid”
Marco de espejo 6x4 aprox. - madera “inlaid”
Trotadora y una máquina de ejercicios “Trotter”
Mesa de comedor
Mesa redonda “piecrust table”
Mesa de “buffet”- “Sideboard”
10 sillas de comedor, 2 sillas de comedor con brazo, un chinero de dos piezas con capitel tallado”
Los referidos muebles no pudieron ser vendidos. El Tribunal de Primera Instancia, en la resolución recurrida, consignó que “[e]l señor Pórtela al día de hoy no ha realizado gestión alguna para la venta de los bienes. Al contrario, ha obstaculizado el proceso de la venta. Tanto así, que en agosto de 2009 acudió en alzada al Tribunal de Apelaciones para solicitar la paralización de la venta de los bienes muebles”. Asimismo, expresó *886 que durante el año 2009 sólo se han efectuado cuatro pagos a través de la Administración para el Sustento de Menores (A.S.U.M.E.) y unos que se acreditaron en una cuenta IRA. Concluyó que a la fecha de la resolución recurrida, las pensiones atrasadas ascendían a $172,337.26, sin contar los intereses. Indicó que “en este caso, vista tras vista, el señor Pórtela no aporta a la pensión alimentaria, salvo una mínima cantidad”.
Hecho este análisis y habida cuenta de la existencia de bienes, el Tribunal de Primera Instancia ordenó que se tasara el bien inmueble sito en Dorado, con el fin de venderlo para que los menores reciban alimentos.
Inconforme con la resolución recurrida, el peticionario Pórtela Torres presentó una petición de certiorari ante nos, en la que señala que erró el foro recurrido al ordenar la venta de bienes para pagar una deuda de pensión. Expresa que no procedía dicha orden porque el foro primario no le concedió un remedio oportuno y efectivo a su solicitud de revisión de pensión alimentaria por cambio en sus circunstancias. Asimismo, expresa que incidió el foro recurrido al ordenar la venta del referido inmueble por varias razones: porque se había ordenado a la recurrida reclamar el retroactivo de la deuda alimentaria en el caso de liquidación de bienes gananciales; al no considerar las aportaciones en especie que realiza, tales como el uso de la vivienda y los bienes inmuebles privativos del peticionario; y al no considerar que el importe de la venta de los bienes muebles que previamente se había ordenado cubre las necesidades alimentarias de sus hijos. Indica también que incidió el Tribunal de Primera Instancia al expresar que el peticionario no había hecho gestiones para la venta de los bienes muebles y al ordenar la venta del inmueble sin considerar que el peticionario está impedido de cumplir dicha orden. Por último, señala que erró el foro primario al no considerar que la venta del inmueble sito en Dorado Beach ha de resultar en detrimento del mejor bienestar de los menores.
Con el beneficio de la comparecencia de las partes, resolvemos.
n
El derecho a reclamar alimentos, como parte del derecho a la vida, tiene profundas raíces constitucionales. El padre o la madre tienen respecto de sus hijos no emancipados el deber de representarlos en el ejercicio de todas las acciones que puedan redundar en su provecho. Art. 153 del Código Civil, 31 L.P.R.A. see. 601. Se entiende por alimentos todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. Los alimentos comprenden también la educación e instrucción del alimentista, cuando es menor de edad. Artículo 142 del Código Civil, 31 L.P.R.A. see. 561.
Es norma reiterada en nuestro ordenamiento que los casos relacionados con los alimentos de menores, están revestidos de un alto interés público. Peña Alcántara v. Warren Ovensen, 162 DPR 764, 773 (2004); Martínez Vázquez v. Rodríguez Laureano, 160 DPR 145, 150 (2003); Argüello López v. Argüello García, 155 DPR 62, 70 (2001). Nuestro más alto foro judicial, en Martínez Vázquez v. Rodríguez Laureano, supra, a la pág. 151, expresó que:
“Dicho interés es uno de categoría suprema que se fundamenta, entre otros, en los principios de solidaridad humana y en los derechos fundamentales del ser humano. ... [Rjespecto a los menores de edad, el derecho de éstos a recibir alimentos es parte esencial del principio natural de conservación que constituye piedra angular del derecho constitucional a la vida. Chévere v. Levis, 150 D.P.R. 525 (2000).
La obligación de alimentar a los hijos menores de edad emana, además, de los Artículos 117, 143 y 153 del Código Civil de Puerto Rico. 31 LPRA §§ 466, 562 y 601. Dicho deber surge de la relación paterno o materno filial y se origina en el momento en que la paternidad o maternidad quedan legalmente establecidas. ” Ríos Sánchez v. Narváez, 163 DPR 611, 617-618 (2004); Martínez Vázquez v. Rodríguez Laureano, supra.
La Ley Núm. 5 del 30 de diciembre de 1986, denominada como la Ley Orgánica de la Administración para el Sustento de Menores (Ley de Sustento de Menores), reformuló la política pública del Estado al crear un *887 procedimiento expedito que brindara protección al mejor interés y bienestar del menor mediante trámites rápidos y eficientes de fijación, modificación y cobro de pensiones alimenticias. Martínez Vázquez v. Rodríguez Laureano, supra, a las págs. 152-153; Chévere v. Levis, 150 DPR 525, 543 (2000).
Posteriormente, nuestra legislatura aprobó la Ley Núm. 86 del 17 de agosto de 1994, 8 LPRA § 501 et seq, para enmendar la Ley para el Sustento de Menores. Dicha Ley al igual que las anteriores impulsa la política pública de promover que los padres y madres asuman la responsabilidad que tienen para con los hijos. Específicamente, la Ley Núm. 86, supra, 8 LPRA § 502, declara como política pública del Estado Libre Asociado:
“[P]rocurar que los padres o las personas legalmente responsables contribuyan, en la medida en que sus recursos lo permitan, a la manutención y bienestar de sus hijos o dependientes mediante el fortalecimiento de los sistemas y la agilización de los procedimientos administrativos y judiciales para la determinación, recaudación y distribución de las pensiones alimentarias ...”.
La obligación de alimentar a los menores se fundamenta en el derecho a la vida, configurado como un derecho inherente a la persona. El derecho de alimentos de los alimentistas está revestido del más alto interés público. Esta obligación está consagrada en el Código Civil de Puerto Rico. El padre y la madre tienen, respecto a sus hijos no emancipados, el deber de alimentarlos, acompañarlos, educarlos y representarlos en todas las acciones que redunden en su beneficio.
La Ley de Sustento de Menores, según enmendada, 8 LPRA § 524, establece unas medidas para que el tribunal o Administrador puedan asegurar la efectividad del pago de pensión alimentaria. Entre las medidas utilizadas se encuentra el embargo de bienes. En lo aquí pertinente, la ley establece que:
“Cualquier tribunal, el Administrador o Juez Administrativo con competencia sobre asuntos referentes a pensiones alimentarias, a petición del alimentista o a su discreción, concederá mediante orden, bajo las Reglas de Procedimiento Civil, en el caso del tribunal y de este capítulo, un embargo, el embargo de fondos en posesión de un tercero, la reclamación y entrega de bienes muebles, el embargo de los ingresos de cualesquiera fuentes de un alimentante, el embargo de bienes muebles o inmuebles, y cualquier otra medida apropiada para asegurar el pago de pensiones alimentarias atrasadas. El gravamen se establecerá y notificará simultáneamente al alimentante concediéndole un término no menos de veinte (20) días para objetarlo y apercibiéndole de su derecho a vista informal, siempre que el alimentante no tuviese derecho a notificación previa. Si el alimentante no objeta la orden de embargo dentro del término expresado o se declara sin lugar su objeción, la orden de embargo advendrá final y firme y ejecutable.”
Específicamente, el Artículo 25 de la citada ley, 8 LPRA 524, establece el procedimiento y las medidas a llevar a cabo para asegurar la efectividad del pago de pensión alimenticia mediante el embargo de bienes. En lo pertinente, establece:
“(1) Los pagos de pensión alimentaria, incluyendo cualesquiera penalidades, tarifas o costas relacionadas, en atraso por más de treinta (30) días constituyen un gravamen por el monto de la deuda sobre todos los ingresos activos, bienes muebles e inmuebles del alimentante. Tal gravamen surge como cuestión de derecho, no obstante cualquier legislación en contrarío. El aseguramiento de efectividad mediante los correspondientes embargos no requerirá notificación judicial previa o vista.
Cualquier tribunal, el Administrador o Juez Administrativo con competencia sobre asuntos referentes a pensiones alimentarias, a petición del alimentista o a su discreción concederá mediante orden, bajo las Reglas de Procedimiento Civil, en el caso del tribunal y de este capítulo, un embargo, el embargo de fondos en posesión de un tercero, la reclamación y entrega de bienes muebles, el embargo de los ingresos de cualesquiera *888 fuentes de un alimentante, el embargo de bienes muebles o inmuebles, y cualquier otra medida apropiada para asegurar el pago de pensiones alimentarias atrasadas. El gravamen se establecerá y notificará simultáneamente al alimentante concediéndole un término no menor de veinte (20) días para objetarlo y apercibiéndole de su derecho a vista informal, siempre que el alimentante no tuviese derecho a notificación previa. Si el alimentante no objeta la orden de embargo dentro del término expresado o se declara sin lugar su objeción, la orden de embargo advendrá final y firme y ejecutable.
(2)...
(3) Un mero error de cómputo en la determinación de los atrasos en una orden de embargo y el pago de la cantidad señalada, si menor a la verdadera, no tendrá el efecto de satisfacer la deuda existente en su totalidad. Si el cómputo erróneo fue certificado por la Administración y la cantidad embargada fuera mayor que la adeudada, no se impondrá responsabilidad alguna al alimentista acreedor, al Administrador de los tribunales o a funcionario alguno del Tribunal General de Justicia ni la Administración, o cualquier funcionario de dichas entidades. La Administración procederá de inmediato a devolver las cantidades que tenga en su poder y, de ser necesario, emitirá una orden al alimentista para que deposite en la Administración cualquier dinero recibido en exceso de lo debido. La Administración, cuando corresponda, procederá a remitir el exceso depositado al alimentante”.
El trámite de la orden de embargo que se emite a tenor con el Artículo 25, se rige por la Ley Núm. 5, supra, y por las Reglas de Procedimiento Civil, en particular el conjunto de normas bajo la Regla 51 que trata sobre la ejecución y los procedimientos posteriores a la sentencia.
Establecida la cantidad de los atrasos, el alimentista podrá presentar una moción ex parte sin la prestación de fianza, conforme dispongan las Reglas de Procedimiento Civil. La orden será efectiva al notificarse. El diligenciamiento de la orden sólo podrá paralizarse mediante el pago de lo debido según surja en la notificación de atrasos recibida por el alimentante deudor. Art. 25(1) y (2) de la Ley Núm. 5, supra, 8 LPRA 254.
Por otro lado, el Tribunal Supremo ha reiterado el deber de los tribunales de instancia de ser fuertes y rigurosos en lograr que los padres cumplan con su deber alimenticio. Rodríguez Avilés v. Rodríguez Beruff, 117 D.P.R. 616, 627 (1986); Valencia, Ex parte, 116 D.P.R. 909, 912 (1986). Los tribunales pueden hacer uso de todo su poder coercitivo lo cual incluye utilizar el procedimiento de desacato para asegurar el cobro de las pensiones alimentarias. Rodríguez Avilés v. Rodríguez Beruff, supra, pág. 626. Sin embargo, dicho remedio debe ser utilizado con prudencia, pues conlleva la privación de un derecho fundamental. El mecanismo de desacato y el encarcelamiento del padre alimentante debe utilizarse como último recurso para lograr el cobro de alimentos en aquellos casos en que éste se niega voluntaria y obstinadamente a cumplir con su obligación. Sosa Rodríguez v. Rivas Sariego, 105 D.P.R. 518, 521-522 (1976).
Culminamos la exposición del derecho aplicable, consignando que el deber que tienen los padres de alimentar a sus hijos incluye el deber de proveerles para su habitación por lo que el hogar seguro se configura precisamente como una forma de contribución a esa carga. El interés propietario que puedan tener los padres sobre la vivienda familiar habitual que se reclama como hogar seguro no es un factor determinante al momento de decidir si procede o no una petición de hogar seguro. Lo cierto es que el padre titular sufre, en efecto, una limitación de derecho temporal encaminada, por supuesto, a proteger la continuidad de la convivencia familiar en beneficio de sus hijos. Ahora bien, ese uso de la vivienda tiene, evidentemente, un valor susceptible de cuantificación económica y viene a integrar, en cierto modo, una prestación in natura, lo que a nuestro juicio exige que sea tenida en cuenta para calcular el importe de las cargas que pesan sobre el padre alimentista. In re: Candelario v. Muñiz, 2007 JTS 123, res. el 7 de junio de 2007.
*889 HI
En la resolución recurrida, el Tribunal de Primera Instancia hizo un recuento procesal de las instancias en que ha intentado lograr el cumplimiento del pago de la pensión alimentaria por parte del peticionario y del accidentado y angustioso trámite del caso. Expresó cómo el peticionario, según las propias expresiones de éste, ha dejado de generar ingresos para dedicarse a la defensa de su caso, lo que a su vez ha resultado en mayores obstáculos para poder cumplir con sus obligaciones alimentarias hacia los menores.
Además, afirmó que la recurrida se encuentra sin servicio de agua y no ha podido pagar el colegio, ni el cable y que “no se le debe permitir al señor Pórtela que cada vez que crea conveniente, una o dos semanas antes, pagar de acuerdo a lo que él estime que debe”. Advirtió también el foro de instancia, que es su deber ponderar otros mecanismos para el pago de la pensión, antes de utilizar el recurso del desacato, lo que ha hecho. A pesar de ello, la deuda alimentaria continúa acumulándose.
Por su parte, el peticionario en su escrito de certiorari, el que acompañó con una solicitud de orden en auxilio de jurisdicción, hizo un extenso recuento procesal del caso. Sostiene que durante el período entre el 1ro. de agosto de 2008 a la fecha de la vista de 30 de julio de 2009, ha hecho pagos, incluyendo el pago del seguro médico privado, ascendentes a $46,907.81, sin tomar en cuenta las aportación que representa el uso de la residencia donde vive la recurrida y los menores, “la cual no paga hipoteca y le pertenece privativamente al peticionario”. Surge también que durante dicho período se estaban llevando a cabo procedimientos de descubrimiento de prueba en tomo a la solicitud de revisión de pensión alimentaria del peticionario. Sostiene que, a pesar de que el Tribunal de Primera Instancia tiene ante sí toda la pmeba para determinar un cambio en las circunstancias del peticionario, ha ordenado la venta de su propiedad en Dorado, privándole de un derecho propietario. Además, aduce que se debe hacer una determinación sobre si procede una reducción de la pensión alimentaria y sobre la fecha de efectividad de dicha orden, antes de concederle a la recurrida el remedio de venta del inmueble que ésta solicitó.
Los dictámenes de custodia y de alimentos no constituyen cosa juzgada, ya que pueden ser modificados de ocurrir un cambio en los hechos y circunstancias que así lo justifique. Sin embargo, éstos tampoco son estrictamente interlocutorios, ya que adjudican y resuelven una reclamación entre las partes. Figueroa v. Del Rosario, 147 D.P.R. 121 (1998). En virtud de ello, la orden de alimentos que se encuentra en vigor es una sentencia. Las alegaciones que presenta el peticionario, sobre la necesidad de considerar aportaciones en especie que realiza, sólo podían ser atendidas mediante apelación o en su día en el procedimiento de revisión de pensión alimentaria pendiente ante el foro primario. No obstante, dicha sentencia es final y firme y el proceso dirigido a la revisión de la pensión alimentaria aún no ha culminado.
Ciertamente, la solicitud de revisión de pensión por cambio de circunstancias no ha sido atendida por el foro de instancia, la que ha estado matizada por un proceso altamente adversativo. En la determinación que en su día tome el foro recurrido, éste podrá atender cualquier solicitud del peticionario, para que se le acredite a su obligación alimentaria las aportaciones en especie que ha hecho, a tenor de lo dispuesto en Candelario v. Muñiz, supra, de así proceder. Sin embargo, el asunto que está ante este Tribunal es si procedía o no conceder la orden para la venta del inmueble propiedad del peticionario, tras haber determinado el foro primario la existencia de una deuda alimentaria.
Como surge de nuestra exposición normativa, la Ley de Sustento de Menores, supra, autoriza el embargo de bienes. Asimismo, en todo pleito antes o después de sentencia, por moción del reclamante, el tribunal puede dictar cualquier orden provisional que sea necesaria para asegurar la efectividad de la sentencia. El tribunal podrá conceder el embargo, el embargo de fondos en posesión de un tercero, la prohibición de enajenar, la reclamación y entrega de bienes muebles, la sindicatura, una orden para hacer o desistir de hacer cualesquiera actos específicos, o podrá ordenar cualquier otra medida que estime apropiada, según las circunstancias del caso. En todo caso en que se solicite un remedio provisional, el tribunal considerará los intereses de todas las *890 partes y dispondrá según requiera la justicia sustancial. 32 L.P.R.A. Ap. Ill, R. 56.1. La Regla 56.1 de Procedimiento Civil, supra, dispone que en todo pleito después de dictada sentencia, por moción del reclamante, el tribunal podrá conceder la anotación de embargo para la eventual venta judicial de bienes inmuebles del deudor por sentencia, sin la prestación de fianza y mediante la notificación a dicha parte o su abogado, según lo requiera la Regla 56.4 de Procedimiento Civil. No es necesario el celebrar una vista para conceder tal remedio en ejecución de sentencia; sólo se requiere la notificación a la parte afectada. P.R. Prod. Credit Assoc. v. Registrador, 123 D.P.R. 231, 245 (1989); Albaladejo v. Vilella Suau, 106 D.P.R. 331, 335 (1977).
Por su parte, la Regla 51 de las de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 51, establece todo lo relativo al procedimiento de apremio o ejecución de una sentencia. Avilés v. Torres, 97 D.P.R. 144, 148 (1969). En este proceso, una vez se lleve a cabo la ejecución de la sentencia mediante la venta judicial del inmueble, el acreedor por sentencia -en este caso la recurrida-, tendría derecho al cobro de lo realmente adeudado, aun cuando se haya ordenado en el mandamiento una cantidad mayor. Metropolitan Marble Corp. v. Pichardo, 145 D.P.R. 607, 611 (1998). Dicha venta deberá cumplir con los requisitos que dispone la Regla 51.8 de Procedimiento Civil, supra. Entre tales requisitos se encuentra la publicación de la venta judicial de los bienes objeto de ejecución y que la misma sea concedida al mejor postor. Banco Gub. de Fomento v. Abarca Warehouses, 109 D.P.R. 132, 136, 137 (1979). Véase, Cuevas Segarra, José A., Práctica Procesal Puertorriqueña, Procedimiento Civil, Vol. II, Publicaciones JTS, Inc., (1988), pág. 288. Tras la ejecución de la sentencia, el deudor tiene a su vez derecho a reclamar mediante moción ante el foro de instancia la devolución de la cuantía en exceso de lo adeudado.
Ante nos, el foro recurrido aún no ha emitido ninguna orden sobre embargo ni sobre ejecución de sentencia para una venta judicial en pública subasta de la propiedad del peticionario. Sólo ha ordenado que se ponga a la venta el inmueble, aunque tiene autoridad para ordenar el embargo y ordenar posteriormente la ejecución de la sentencia de alimentos.
Los alimentos de los menores están revestidos de un alto interés público. Al peticionario se le impuso una pensión alimentaria que, según aduce, no puede cumplir. Sin embargo, es dueño de un inmueble, que se encuentra libre de gravámenes y que puede cubrir el pago de la pensión alimentaria. Sus argumentos en el sentido de que no procede la venta del inmueble, porque se había ordenado la venta de bienes muebles que cubrirían la totalidad de lo adeudado no encuentran apoyo en la Ley de Sustento de Menores, supra, pues dicha ley no impide el uso de los mecanismos disponibles de forma simultánea, ni requiere utilizar de forma prioritaria un mecanismo sobre otro. Por tanto, considerando que la venta de bienes muebles fue ordenada desde agosto de 2009 y aún no ha rendido frutos, nada impedía al foro primario imponer otros mecanismos de cumplimiento. Así pues, el Tribunal de Primera Instancia no está obligado a esperar la venta de los bienes muebles ni resulta pertinente atender el señalamiento de error, sobre si ha facilitado o no dicha venta. La Ley de Sustento de Menores ha establecido alternativas para lograr el cumplimiento de las pensiones, que procuren asegurar que éstos reciban de las personas responsables dichos pagos a tiempo. La resolución recurrida pretende precisamente eso.
Los planteamientos del peticionario no nos convencen. El hecho de que, en su día, pueda resultar victorioso en una solicitud de revisión de la pensión alimentaria no autoriza al foro de instancia a detener la imposición de los mecanismos para poner en vigor la sentencia de alimentos que se encuentra en vigor. Ello iría en contra de la clara política pública, ya enunciada. Máxime cuando en su día, de venderse el inmueble, el peticionario puede reclamar los créditos a los que tenga derecho, de existir. Es decir, de haberse ordenado una reducción de la pensión alimentaria que conlleve una reducción de la deuda, sus derechos quedarían protegidos.
Por otra parte, el foro primario ni siquiera ha ejercido las facultades que le concede la ley, sino que ha ordenado la venta del inmueble en el libre mercado y no por la vía de ejecución. Su actuación ha sido mesurada, *891 ponderada y adelanta la política pública enunciada por la Ley de Sustento de Menores, supra, a la vez que facilita que la venta se realice por un precio mayor al que se obtendría mediante la ejecución de la sentencia, lo que redunda en beneficio del propio peticionario, dueño de la propiedad en cuestión. No se cometieron los errores señalados.
Por los fundamentos discutidos, se expide el recurso de certiorari solicitado y se confirma la resolución recurrida. En virtud de lo aquí dispuesto, se declara sin lugar la moción en auxilio de jurisdicción presentada por el peticionario.
Adelántese por fax, por teléfono o por correo electrónico, además de notificar por la vía ordinaria.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 33

. KLCE-2009-00050.

. Ver orden de 28 de agosto de 2009, pág. 396 del apéndice del peticionario.