El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
La controversia que hoy atendemos requiere que deter-minemos si las escrituras públicas de venta judicial que otorga un acreedor cuando comparece como licitador a la subasta y se lleva la buena pro, están incluidas en el tér-mino de compraventa dispuesto en la Ley Núm. 244 de 2 de septiembre de 2004 para los efectos de cancelar sellos a favor de la Sociedad de Asistencia Legal. Examinada la controversia antes descrita a la luz de la normativa aplica-ble, resolvemos en la afirmativa.
I
El 19 de diciembre de 2003, el Tribunal de Primera Ins-tancia emitió una sentencia en rebeldía sobre una de-manda de cobro de dinero y ejecución de hipoteca presen-tada por el Banco Popular de Puerto Rico (Banco Popular). En la sentencia, el foro primario condenó a Carmen Julia Rivera Maldonado y a Juan Torres Rivera (demandados) a pagar solidariamente al Banco Popular la suma principal de $689,130.61 y otras sumas de dinero relacionadas con el contrato de préstamo hipotecario objeto de la demanda, el cual estaba garantizado con una propiedad descrita como finca rústica.(1)
Debido a que la sentencia antes mencionada no fue sa-tisfecha por los demandados, el 24 de mayo de 2004 el tribunal de instancia emitió una Orden en la que declaró “ha *667 lugar” una moción de ejecución de sentencia presentada por el Banco Popular. Así, ordenó a la Secretaria del tribunal que expidiera un mandamiento dirigido al alguacil para que procediera con la ejecución de la sentencia y ven-diera en pública subasta la propiedad que se describe en ella. En cumplimiento con la orden de ejecución de senten-cia del Tribunal de Primera Instancia, la Secretaria de dicho tribunal expidió el mandamiento requerido.
El 4 de octubre de 2004, luego de que se acreditó la publicación de los correspondientes anuncios de subasta en un periódico y en lugares públicos por el término que re-quiere la ley, se llevó a cabo la venta en pública subasta, siendo el tipo mínimo $692,000. A la subasta solo compa-reció la Leda. Alondra Fraga Meléndez en representación del Banco Popular, quien ofreció los $692,000. Como no hubo quien mejorara la oferta, se le adjudicó la buena pro al Banco Popular por la cantidad de $692,000, en abono de la deuda adjudicada por el Tribunal de Primera Instancia.
Ese mismo día, la alguacil encargada de la subasta, la Sra. Ivonne Benitez López, y el Sr. José David Hernández Dávila —en representación del Banco Popular— otorgaron una Escritura de Venta Judicial Núm. 77(2) (Escritura) ante la notaria Alondra Fraga Meléndez, mediante la cual la alguacil “vende, cede, adjudica y traspasa”(3) al Banco Popular el inmueble que garantizaba el préstamo hipotecario.
Así las cosas, el 14 de enero de 2005, la Escritura fue presentada en la Sección Primera del Registro de la Pro-piedad de Caguas. El 30 de marzo de 2007, el Registrador de la Propiedad de Caguas I, Hon. Richard F. Keeler Váz- *668 quez (Registrador), notificó faltas en la Escritura, por lo que no la inscribió. Indicó el Registrador que para comple-tar los derechos de inscripción, el Banco Popular necesi-taba pagar $35 en sellos a favor de la Sociedad para Asis-tencia Legal (Asistencia Legal). Además, señaló el Registrador que “la propiedad está afecta a dos hipotecas posteriores (Gravámenes) y no se expresa destino final de las mismas o si dicho acreedores fueron notificados (Emplazados)”.
Inconforme con dicha interpretación, el 12 de abril de 2007, el Banco Popular remitió un escrito de recalificación en el que rebatió los señalamientos del Registrador. El Banco Popular entendió que de acuerdo con la Ley Núm. 244 de 2 de septiembre de 2004, la cual enmendó la Ley Núm. 101 de 12 de mayo de 1943 (4 L.P.R.A. sec. 851), la obligación del notario de cancelar sellos de Asistencia Legal corresponde en escrituras de compraventa, compra-venta e hipoteca, y constitución o cancelación de hipoteca; no así a escrituras de ventas judiciales por ser estas distin-guibles de la compraventa. Asimismo, añadió respecto a los gravámenes posteriores señalados por el Registrador, que el Tribunal de Primera Instancia le había ordenado al Re-gistrador que cancelara en los libros a su cargo “la hipoteca de $36,500.00 y la de $27,000.00 que fueron presentadas al Asiento 254 del Diario 1084 y al Asiento 245 del Diario 1057”. Escrito de recalificación, Apéndice, pág. 35.(4) Final-mente, el Banco Popular volvió a solicitar la inscripción de la Escritura.
El 11 de mayo de 2007, el Registrador nuevamente no-tificó las faltas que impedían el registro de la Escritura. En síntesis, el Registrador señaló que faltaban los sellos de Asistencia Legal por $35 “para proceder con la cancelación del pagaré, según solicitado por [el Banco Popular en la Escritura]”. Apéndice, pág. 36. Además, solicitó al Banco *669 Popular la copia certificada del pagaré, ya que esta no se había acompañado como documento complementario. Aún inconforme, el 18 de mayo de 2007 el Banco Popular pre-sentó un segundo escrito de recalificación en el que reiteró su posición en cuanto a que una escritura de venta judicial no cancela sellos de Asistencia Legal y alegó que la cance-lación del pagaré es un derecho inherente al otorgamiento de la venta judicial y no depende del pago de esos sellos. En cuanto al segundo señalamiento, el Banco Popular en-vió una copia certificada del pagaré, pero aclaró que ya lo había enviado junto con la copia certificada de la Escritura que había presentado en el Registro de la Propiedad el 14 de enero de 2005.
El 29 de junio de 2007, el Registrador notificó una Ca-lificación Denegatoria Final por los mismos fundamentos que antes había expresado, pues entendió que el escrito de recalificación del Banco Popular no corrigió los errores se-ñalados en la notificación anterior. En desacuerdo con la calificación del Registrador, el 17 de julio de 2007 el Banco Popular acudió ante este Tribunal mediante un Recurso Gubernativo en el que hizo el siguiente señalamiento de objeción a la calificación:
Erró el Honorable Registrador de la Propiedad de Caguas, Sección I, al denegar la inscripción de la “Escritura de Venta Judicial” Número 77. Recurso gubernativo, pág. 6.
El Banco Popular argumentó que la Ley Núm. 244, supra, no aplica a una escritura de venta judicial debido a que no es uno de los instrumentos públicos que se mencio-nan en la ley antes citada. Por su parte, el Registrador presentó un escrito en contestación al Recurso Guberna-tivo, en el que aclaró que la única falta notificada al Banco Popular sin subsanar era la falta de sellos a favor de la Sociedad para Asistencia Legal por $35 para proceder en-tonces a cancelar el pagaré. Concluyó el Registrador que la venta judicial es una compraventa en todo su concepto legal, por lo que aplica a las escrituras de ventas judiciales lo *670 dispuesto en la Ley Núm. 244, supra, sobre el deber del notario de cancelar sellos a favor de la Sociedad para Asis-tencia Legal. Asimismo, notificó que se canceló la hipoteca objeto de la “Compraventa Judicial”. Con el beneficio de conocer la posición de ambas partes, el 2 de octubre de 2007, el caso de epígrafe quedó sometido ante nuestra consideración. Veamos la normativa aplicable a la contro-versia que hoy nos ocupa.
II
A. La Ley Núm. 244, supra, añadió un inciso (2) a lo dispuesto en la See. 2 de la Ley Núm. 101, supra, 4 L.P.R.A. sec. 851(2), sobre el deber del notario de cancelar sellos a favor de la Sociedad para Asistencia Legal. En la Exposición de Motivos de la Ley Núm. 244, supra, el legislador señaló que el propósito de dicha ley era aumentar los ingresos de la Sociedad para Asistencia Legal, pues esta enfrentaba un déficit operacional que le impedía cumplir cabalmente con sus compromisos. Como es conocido por muchos, la Sociedad para Asistencia Legal tiene como misión proveer representación legal a personas indigentes imputadas de delitos. (5) Para paliar dicho déficit, mediante la Ley Núm. 244, supra, el legislador impuso un nuevo arancel “a cancelarse en todas las escrituras públicas de compraventa que se otorguen ante notario debidamente autorizado y registrado a favor de la Sociedad para la Asistencia Legal”. 2004 (Parte 2) Leyes de Puerto Rico 1798. El referido inciso establece:
(2) Además del cobro de derechos que se establece en el in-ciso (1), en cada documento de escritura de compraventa, com-praventa e hipoteca, constitución o cancelación de hipoteca, que haya de ser protocolizado y por cada copia de éstas, se
*671 fijarán y cancelarán además sellos, que la Sociedad para Asis-tencia Legal adoptará y expedirá, por valor de cinco dólares ($5) en el original y dos dólares con cincuenta centavos ($2.50) por cada copia, cuando la cuantía del documento sea entre veinticinco mil dólares ($25,000) y cincuenta mil dólares ($50,000). Cuando la cuantía del documento exceda de cin-cuenta mil dólares ($50,000) se fijarán y cancelarán sellos adi-cionales, de cinco dólares ($5) en el original y dos dólares con cincuenta centavos ($2.50) en toda copia, por cada cincuenta mil dólares ($50,000) o fracción subsiguiente. No existirá la obligación de de cancelar sellos a favor de la Sociedad para Asistencia Legal aquí establecidos en aquellos casos en que la cuantía sea menor de veinticinco mil dólares ($25,000), ni cuando por disposición de ley se exima el cancelar sellos de Rentas Internas y el arancel notarial. Se faculta al Secretario de Hacienda a adoptar y expedir electrónicamente sellos para la Sociedad para Asistencia Legal que servirán los propósitos establecidos en esta sección, y a vender los mismos de confor-midad con las disposiciones de las sees. 896 a 899 de este título. (Énfasis nuestro.) 4 L.P.R.A. sec. 851(2).
Es decir, según el texto antes citado, se cancelarán se-llos a favor de Asistencia Legal en las escrituras de com-praventa, compraventa e hipoteca, y en las de constitución o cancelación de hipotecas. No obstante, se estará exento del pago de los referidos sellos en aquellos casos en los que la cuantía sea menor de $25,000 o cuando, por disposición de ley, se exima de cancelar sellos de Rentas Internas y el arancel notarial.
B. Ahora bien, en cuanto al contrato de compraventa, el Art. 1334 del Código Civil, 31 L.P.R.A. sec. 3741, lo define de la manera siguiente:
Por el contrato de compra y venta uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente.
Puig Brutau define contrato de compraventa como “un contrato por el que una parte transmite o se obliga a trans-mitir una cosa o un derecho a la otra parte, a cambio de *672 que ésta le pague un precio en dinero”(6) Así, este contrato se forma cuando las partes contratantes logran un acuerdo en cuanto a la cosa y el precio(7) siendo estos últimos los elementos objetivos o reales de dicho contrato(8) También, el contrato de compraventa es consensual(9) y aunque el consentimiento no necesita forma, el contrato de compra-venta de bienes inmuebles tiene que constar en escritura pública para que se pueda inscribir en el Registro(10)
Además, el contrato de compraventa debe cumplir con los requisitos esenciales para la validez de los contratos en general. Estos son: consentimiento de los contratantes, objeto cierto que sea materia del contrato y causa de la obligación que se establezca(11) Así, el consentimiento “se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato”(12) De otro lado, el objeto de una compraventa puede ser cosas corporales, incorporales o de cosa futura, siempre que recaiga en una cosa determinada en su especie y que se encuentre dentro del comercio de las personas(13) En cuanto a la causa de los contratos onerosos —como lo es el de compraventa— se entiende que es la “prestación o promesa de una cosa o servicio por la otra parte ...”(14)
[4 — 5] C. Por otra parte, solo pueden ser objeto del contrato de hipoteca los bienes inmuebles y los derechos *673 reales enajenables de acuerdo con las leyes, “impuestos so-bre bienes de aquella clase”.(15) La hipoteca es un derecho real que sujeta o vincula lo hipotecado a que eventual-mente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación diner-aria.(16) Así, la hipoteca se define por ser “de carácter acce-sorio, indivisible, de constitución registral, y grava bienes inmuebles, ajenos y enajenables, que permanecen en pose-sión de su propietario o titular ...”. (Enfasis supri-mido.)(17) Debido a que la hipoteca es un derecho real de “realización de valor”, su titular tiene la facultad de exigir la enajenación de la cosa que se dio en garantía para reco-brar lo adeudado. Así lo dispone el Art. 1757 del Código Civil, cuando expresa que “vencida la obligación principal, puedan ser enajenadas las cosas en que consiste la prenda o hipoteca para pagar al acreedor”,(18) y a esto consintió el deudor cuando otorgó el contrato de hipoteca. Por lo tanto, ante la realidad de que una hipoteca trae consigo la posi-bilidad de que, en caso de que el deudor incumpla con su obligación surja una venta en pública subasta del bien hi-potecado, es necesario que quien constituya una hipoteca sobre sus bienes tenga la libre disposición de estos.(19)
En cuanto a los mecanismos de ejecución hipotecaria, “[a] pesar de su importancia y frecuente uso, no ha sido sencillo precisar [su] naturaleza .. .”.(20) No obstante lo anterior, encontramos estos procesos regulados por la Ley Hipotecaria y del Registro de la Propiedad,(21) las Reglas de *674 Procedimiento Civil(22) y el Código Civil de Puerto Rico.(23) Así, el Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2721, establece que la subasta se celebrará el día, la hora y el sitio que indique el edicto ante un alguacil del Tribunal de Primera Instancia. Asi-mismo, el Art. 221, supra, indica que el precio en que ha-yan tasado la finca al momento de constituir la hipoteca servirá de tipo mínimo para la subasta y no se admitirá oferta inferior a dicho tipo. Añade que si en la primera subasta no se produce remate ni adjudicación, el tipo mí-nimo que se usará en la segunda subasta será de 2/3 partes del precio pactado, y la mitad, si hubiese que llegar a una tercera subasta. En caso de que la tercera subasta se declare desierta, se dará por terminado el procedimiento, se adjudicará al acreedor la finca por la totalidad de la deuda si esta es igual o menor que el monto del tipo de la tercera subasta, y se le abonará a la deuda si esta es mayor.(24)
Cónsono con lo anterior, la Regla 51.8(d) de Procedimiento Civil, supra, señala, en lo pertinente, que una vez se verifique la venta, el oficial a su cargo levantará un acta que describa lo acontecido durante la subasta y la adjudicación en venta al mejor postor, “quien pagará el importe de la venta en dinero efectivo o en cheque certificado a la orden del oficial en cuestión”. Sin embargo, el Art. 222 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. see. 2722, dispone, en lo pertinente, que el acreedor ejecutante puede concurrir como postor a todas las subastas si así lo quiere y, en el caso en que se lleve la buena pro en el remate, se le abonará total o parcialmente el importe de su crédito al precio ofrecido por él. Esto último es lo único que distingue al acreedor que comparece a la subasta como licitador de los demás licitadores que compare- *675 cen a comprar el inmueble subastado.(25) Respecto a este particular, hemos expresado que el hecho de que el acree-dor-rematante utilice su crédito como forma de pago, no lo exime de “tener que igualar o superar el tipo mínimo esta-blecido en la escritura de constitución de hipoteca”.(26) En esencia, tal y como resolvimos en Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 381 (1997), el acreedor ejecu-tante que comparezca a la subasta en calidad de postor deberá
... (1) participar en la puja del inmueble mediante la proposi-ción de una oferta, tal como lo haría cualquier licitador; (2) igualar o superar con su oferta el tipo mínimo establecido, y (3) en caso de obtener la buena pro, satisfacer la diferencia entre la postura ofrecida y el importe de su crédito más los intereses.
Como es de notar, la Ley Hipotecaria y del Registro de la Propiedad y determinadas reglas de procedimiento civil se encargan del esquema procesal de la ejecución hipoteca-ria y de la venta judicial, mientras que la normativa apli-cable a las compraventas dispuesta en el Código Civil faci-lita “la interpretación y [llena] las lagunas del esquema procesal”.(27) Precisamente el Art. 1378 del Código Civil(28) menciona, respecto al saneamiento en los contratos de compraventa, que en la venta judicial nunca habrá lugar a responsabilidad por daños y perjuicios, pero sí a todo lo demás dispuesto en los Arts. 1363 a 1377.(29) Además, el Art. 1348 del Código Civil(30) dispone, también en el título de compraventa, acerca de las personas que no pueden ad-quirir por compra “aunque sea en subasta pública o judicial”, así sea por persona intermediaria.
*676 Es importante señalar que el legislador estable-ció el esquema jurídico a seguir en los procedimientos de ejecución de hipotecas y venta de bienes hipotecados antes descrito, con el propósito de proteger a los deudores dueños de los bienes hipotecados, para que en caso de ejecución y venta en pública subasta, se le dé el mayor valor posible a sus propiedades.(31) La intención del legislador en cuanto a este particular va de acuerdo con la prohibición dispuesta en el Art. 1780 del Código Civil(32) sobre el pacto comisorio, en el que se declara nulo el pacto que autorice al acreedor hipotecario a adjudicarse la finca del deudor hipotecante al incumplir éste con el contrato garantizado con hipoteca. Así, en los casos de ejecución de hipoteca lo que procede es la venta del bien inmueble para satisfacer la deuda del acreedor ejecutante. Con el beneficio de la normativa antes expuesta, resolvemos.
III
El presente Recurso Gubernativo plantea una contro-versia relacionada con los derechos que cancela una escri-tura de venta judicial al presentarse para inscripción en el Registro de la Propiedad. Específicamente, nos corres-ponde resolver si la escritura pública de venta judicial que otorga un acreedor ejecutante cuando comparece, además, como licitador a la subasta, se considera como una de com-praventa a los efectos de lo dispuesto en la Ley Núm. 244, supra, sobre el deber del notario de cancelar sellos a favor de Asistencia Legal. Examinada la doctrina antes discu-tida, resolvemos en la afirmativa. Veamos.
En este caso, el Tribunal de Primera Instancia emitió una sentencia en rebeldía sobre una demanda de cobro de dinero y ejecución de hipoteca a favor del Banco Popular. *677 Luego de los trámites procesales requeridos para la cele-bración de la venta del inmueble que garantizaba el prés-tamo hipotecario prestado por el Banco Popular, éste com-pareció voluntariamente como licitador a la primera subasta y se llevó la buena pro al dar su crédito como precio. La controversia ante nuestra consideración surge cuando el Banco Popular se propuso inscribir la “Escritura de Venta Judicial” en el Registro de la Propiedad, Sección I de Caguas. Allí, el Registrador le indicó que faltaba cance-lar los sellos a favor de la Sociedad para Asistencia Legal, según lo dispuesto en la Ley Núm. 244, supra, por ser la venta judicial “una compraventa en todo su concepto legal”. El Banco Popular disintió del razonamiento del Re-gistrador por entender que la venta judicial es distinguible de una compraventa.
Es cierto que la venta judicial tiene unas características procesales particulares que la distinguen de una compraventa ordinaria, razón por la cual, al referirnos al carácter de la comparecencia del alguacil encargado de la subasta para la realización de los bienes, resolvimos en Banco Gub. de Fomento v. Abarca Warehouses, 109 D.P.R. 132, 134 (1979), que “[l]a venta forzosa judicial carece de la base consensual del contrato de compra y venta definido en el Art. 1334 del Código Civil, 31 L.P.R.A. see. 3741”. No obstante lo anterior, no podemos pasar por alto que en la venta judicial en pública subasta están presentes los dos elementos reales del contrato de compraventa, entiéndase cosa y precio, pues de ordinario, comparece uno o varios compradores a licitar por un bien inmueble a cambio de un precio. En este punto debemos reproducir unas expresiones de Roca Sastre que citamos en el mismo caso Banco Gub. de Fomento v. Abarca Warehouses, supra, pág. 134 esc. 1:
“El pensamiento del legislador en punto a la naturaleza de la adjudicación al rematante o adjudicatario es ver en ella una especie de compraventa, ya que a veces habla de ‘venta’ y de *678 ‘precio’. Guasp se opone a esta tesis, por entender que falta el consentimiento del dueño, pero como en definitiva, se produce una transmisión por precio, cabe asimilar en muchos aspectos este acto al contrato de compraventa, sin olvidar que dada la intervención de la justicia en esta realización de bienes ella participa del carácter de un acto estatal, circunstancia que hacen destacar los procesalistas.” (Enfasis en el original supri-mido y énfasis suplido.)
Como mencionamos antes, cuando un acreedor acude a la subasta como licitador lo único que lo distingue de un comprador que comparece a licitar es el crédito que ostenta el acreedor a su favor y que puede usar como parte del precio de la venta.
A su vez, este Tribunal se ha referido indistintamente a la escritura de venta judicial en ejecución de hipoteca como una escritura pública de compraventa judicial. (33) De la misma forma, al referirnos a una subasta pública para cumplir con una orden judicial, en Sobs, de Ezquiaga, Etc., v. Corte de Dist. de San Juan, 31 D.P.R. 563, 566 (1923), dijimos que “por medio de la subasta lo que se verifica es simplemente un contrato de compraventa, y el comprador ha de pagar por precio de los bienes, dinero contante o signo que lo represente, según así define dicho contrato el artículo 1348 del Código Civil ...”. Así, “un análisis de nuestra jurisprudencia revela que [los mecanismos de eje-cución hipotecaria] se han conceptualizado como institucio-nes de carácter jurídico-procesal inspiradas en el contrato de compraventa”.(34)
En definitiva, entendemos que cuando el legislador ex-presó en la Exposición de Motivos de la Ley Núm. 244, supra, que en “todas las escrituras públicas de compra-venta que se otorguen ante notario debidamente autori- *679 zado y registrado”(35) debían cancelarse los sellos a favor de Asistencia Legal, se refería a todas las escrituras públi-cas que incluyeran la adquisición de bienes inmuebles a título oneroso, es decir, pagando un precio a cambio del bien.
IV
Por los fundamentos antes expuestos, procede la falta notificada por el Registrador de la Propiedad, Sección I de Caguas. El peticionario debe cancelar los sellos a favor de la Sociedad para Asistencia Legal en la escritura de venta judicial para que el Registrador inscriba la “Escritura de Venta Judicial, Número 77”.

Se dictará Sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con la expresión siguiente:
La Juez Asociada Señora Rodríguez Rodríguez hace constar que conforme el razonamiento expresado en su voto disidente en Smyth, Puig v. Oriental Bank, 170 D.P.R. 73 (2007), pro-cede cancelar en la escritura de venta judicial el arancel esta-blecido en la Ley Núm. 244 de 2 de septiembre de 2004 a favor de la Sociedad para Asistencia Legal.

 Las otras sumas de dinero que Carmen Julia Rivera Maldonado y Juan Torres Rivera debían pagar solidariamente son las siguientes: 7% de interés anual sobre el principal desde el 1 de diciembre de 2001 hasta su total pago; $113.83 mensuales por seguros contra riesgos; $230.19 mensuales por recargos por demora desde el 1 de enero de 2002 hasta su total pago y hasta la cantidad líquida y estipu-lada de $69,200 para costas, gastos y honorarios de abogados; $1,611.33 por recargos acumulados, y cualquier otra suma que suija del contrato de préstamo hipotecario evidenciado por el pagaré que suscribieron los demandados.

 En el original de la referida Escritura se canceló $694 en derechos ($693 en Sellos de Rentas Internas más $1 por el sello notarial). En la copia certificada que sería enviada al Registro de la Propiedad se canceló $3,076 ($346.50 en Sellos de Rentas Internas, $1 por el sello notarial, $2,718 por el comprobante de inscripción, $10 por el comprobante de presentación y $.50 por el Sello de Rentas Internas para la presentación en el Registro de la Propiedad).

 Escritura de Venta Judicial Número 77, Cláusula Cuarta; Apéndice, pág. 10.

O El Banco Popular indicó al Registrador de la Propiedad (Registrador) que esa información constaba en el Asiento 453 del Diario 1131 de 14 de febrero de 2007.

 Sociedad para Asistencia Legal de Puerto Rico, Misión (disponible en: http:// www.salpr.org/about/Xúltima visita en febrero de 2011).

 J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosch, 1982, pág. 119.

 J.R. Vélez Torres, Curso de Derecho Civil: derecho de contratos, San Juan, Ed. Rev. U.I.P.R., 1990, T. IV, Vol. II, pág. 160; 31 L.P.R.A. see. 3746.

 Puig Brutau, op. cit, pág. 135.

 L.E. Diez-Picazo y A. Gullón, Sistema de Derecho Civil, 6ta ed., Madrid, Ed. Tecnos, 1989, Vol. II, pág. 279.

 31 L.P.R.A. sec. 3453.

 31 L.P.R.A. sec. 3391.

 31 L.P.R.A. sec. 3401.

 Diez-Picazo y Gullón, op. cit., págs. 283-284; 31 L.P.R.A. sec. 3421 y 3423.

 31 L.P.R.A. sec. 3431.

 31 L.P.R.A. see. 5041.

 L.R. Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., San Juan, Jurídica Editores, 2002, pág. 481; 31 L.P.R.A. see. 5043.

 Rivera Rivera, op. cit, pág. 481.

 31 L.P.R.A. sec. 5002.

 Rivera Rivera, op. cit., págs. 494-495.

 Smyth, Puig v. Oriental Bank, 170 D.P.R. 73, 91 (2007) (Resolución), voto disidente de la Juez Asociada Señora Rodríguez Rodríguez.

 Véase 30 L.P.R.A. secs. 2701-2735.

 Véase Regla 51.3 y 51.8 de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III).

 Respecto a la venta judicial, véase 31 L.P.R.A. secs. 3831-3846a.

 Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2721.

 Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 379 (1997).

 íd.

 Smyth, Puig v. Oriental Bank, supra, pág. 94.

 31 L.P.R.A. sec. 3846.

 31 L.P.R.A. sec. 3831-3845.

 31 L.P.R.A. sec. 3773.

 Coop. Ahorro y Créd. v. Registrador, supra, pág. 385.

 31 L.P.R.A. sec. 5048.

 Véanse, por ejemplo: Coop. Ahorro y Créd. v. Registrador, supra, pág. 384; C.R.U.V. v. Registrador, 117 D.P.R. 662, 667 (1986); Santiago v. Registrador, 72 D.P.R. 57 (1951); García u. Registrador, 66 D.P.R. 683 (1946).

 Smyth, Puig v. Oriental Bank, supra, págs. 91-92.

 2004 (Parte 2) Leyes de Puerto Rico 1798.