Cooperativa de Ahorro y Crédito La Sagrada Familia, recurrente, *v.* El Registrador de la Propiedad, recurrido.

Número: RG-96-2          Resuelto: 29 de enero de 1997

370

*Ramón E. Surillo Ascar,* abogado de la recurrente; el Registrador de la Propiedad recurrido compareció por escrito.

Opinión del Tribunal emitida por el Juez Asociado Señor Fuster Berlingeri.

I

Debemos resolver si un inmueble, que sea objeto de ejecución, puede ser adjudicado en la primera subasta como pago de una sentencia en favor del acreedor ejecutante, aun cuando no surja del acta de esa subasta que dicho acreedor compareció a ésta en calidad de licitador, ni que haya pagado la diferencia entre el importe de su crédito y el tipo mínimo establecido para esa primera subasta.

II

Mediante la Escritura Núm. 30, otorgada el 10 de mayo de 1989 ante el notario Héctor Manuel Aponte Ortiz, los esposos José Antonio Mediavilla Ramos y Ruth Violeta Negrón Marrero constituyeron una hipoteca voluntaria en garantía de un pagaré suscrito a la orden de la Cooperativa de Ahorro y Crédito la Sagrada Familia (en adelante la Cooperativa). Dicho pagaré se constituyó por ocho mil seiscientos treinta dólares con dieciséis centavos ($8,630.16), más intereses al once por ciento (11%) anual y un crédito adicional igual al diez porciento (10%) de la suma principal de dicho pagaré; pero, en ningún caso, menor de quinientos dólares ($500). En el párrafo trigésimo primero de dicha escritura, los deudores hipotecarios hicieron constar que tasaban la propiedad hipotecada en ocho mil seiscientos treinta dólares con dieciséis centavos ($8,630.16). Dicha

cantidad serviría de tipo mínimo de la primera subasta, en caso de tener que ejecutar la propiedad.

Cuatro años y medio después de la referida transacción, el 12 de noviembre de 1993, ante la falta de pago de los deudores, la Cooperativa presentó una demanda para la ejecución de hipoteca por la vía ordinaria ante el antiguo Tribunal de Distrito, Sala de Toa Alta. El 26 de abril de 1994 se anotó la rebeldía a los demandados debido a su incomparecencia.

Celebrada la vista del caso en su fondo, el 15 de julio de 1994, el tribunal de instancia dictó la sentencia en rebeldía. Condenó a los demandados al pago del principal adeudado de cinco mil doscientos dos dólares con cincuenta y siete centavos ($5,202.57), más dos mil ciento treinta y nueve dólares con ochenta centavos ($2,139.80) de intereses hasta el 7 de junio de 1994, más el crédito adicional igual al 10% de la suma, o sea, ochocientos sesenta y tres dólares con dos centavos ($863.02) para costas, gastos y honorarios de abogado; para un total de $8,205.39, *cantidad que era menor que el tipo mínimo pactado para la primera subasta.* Con el propósito de satisfacer esta sentencia, el tribunal ordenó la venta en subasta pública de la propiedad hipotecada. A tenor con dicha orden, el alguacil de ese tribunal procedió a publicar el correspondiente aviso de subasta.

El 18 de enero de 1995, en el sitio y la hora pautados para la celebración de la primera subasta, el alguacil del tribunal sentenciador leyó en voz alta una descripción de la propiedad inmueble que habría de ser ejecutada. Debido a la falta de licitadores particulares que ofrecieran sus respectivas posturas, se le adjudicó al demandante, como pago de la sentencia, el inmueble en cuestión y se procedió a dejar sin efecto la segunda y tercera subastas programadas.

El acta de comparecencia de esa primera subasta pública describió lo acontecido en ella de la manera siguiente:

## ACTA DE COMPARECENCIA A PRIMERA SUBASTA

El día 18 de enero de 1995, a las diez de la mañana, en el Edificio del Tribunal de Distrito de Puerto Rico, Sala de Toa Alta; y a tenor con Sentencia dictada el 15 de julio de 1994 por este Tribunal en el caso de epígrafe, el Alguacil suscribiente luego de haber publicado los correspondientes avisos de subastas en el periódico El Nuevo Día, según consta de la certificación expedida por la señora Zuzel Figueredo, Gerente Clasificados y Edictos de dicho periódico, debidamente autenticada bajo el Número de Afidávit 4320, de fecha 23 de diciembre de 1994, ante el Notario Público Alberto Bacó Bagué, se procedió a vender en pública subasta la siguiente propiedad:

___"RUSTICA: Terreno de una cuerda más o menos equivalentes a TRES MIL NOVECIENTOS TREINTA PUNTO TREINTA Y NUEVE (3930.39) CUERDAS, en el Barrio Palmarejo del término municipal de Corozal; y que colinda por el Este, con Luis Mediavilla y Ramón Negrón; por el Oeste, con Luis Mediavilla; por el Sur, con Carmen Mediavilla; y por el Norte, con Ramón Negrón."

___Inscrita al Folio 148 del Tomo 114 de Corozal, del Registro de la Propiedad de Barranquitas, Finca Número 5.892, inscripción tercera.

Siendo las 10:15 a.m. de la fecha antes mencionada, quedó abierta la subasta estando presentes la Cooperativa de Ahorro y Crédito La Sagrada Familia, parte demandante, representada por la señora María del Carmen Ortiz Alvelo, Vicepresidente del Departamento de Cobros de dicha Cooperativa; así como, por su representante legal; la parte demandada no compareció ni representante legal alguno; tampoco compareció licitador particular alguno; y compareció el señor Luis H. Díaz Montero, Alguacil II Interino de este Tribunal.

No estando presentes más ninguna otra persona con interés ni parte ni sus representantes legales.

Se acreditó así mismo en debida forma mediante la correspondiente declaración jurada, haberse colocado los Avisos de Subastas en todos los lugares que la ley requiere.

Anunciada en voz alta la venta del inmueble antes descrito, no hubo licitador; se le adjudicó a la parte demandante la venta del inmueble. Por lo cual, el Marshal procedió a dejar sin efecto la segunda subasta y la tercera subasta programadas para el 25 de enero de 1995 y el 1 de febrero de 1995, a las diez de la mañana, por habérsele adjudicado a la parte demandante el inmueble como pago de la sentencia.

En Toa Alta, Puerto Rico, hoy 20 de enero de 1995.

Firmado: Alguacil, Tribunal de Distrito de Puerto Rico, Sala de Toa Alta.

El 11 de mayo de 1995, ese mismo alguacil, en representación de los deudores demandados titulares del bien ejecutado, otorgó ante el notario Ramón E. Surillo Ascar la correspondiente escritura pública de traspaso en favor de la Cooperativa. En el tercer inciso de esa escritura, las partes acordaron la trasmisión del bien en favor de la Cooperativa, pero, a su vez, expusieron lo siguiente:

__TERCERO: Y con estos antecedentes el compareciente, LUIS HUMBERTO DIAZ MONTERO, en su carácter del Alguacil II Interino del Estado Libre Asociado de Puerto Rico, Tribunal de Primera Instancia, Subsección de Distrito, Sala de Toa Alta, Puerto Rico, y asumiendo en derecho la representación de los demandados José Antonio Mediavilla Ramos, Ruth Violeta Negrón Marrero; y la Sociedad Legal de Gananciales compuesta por ambos, ambos mayores de edad, casados entre sí, propietarios y vecinos de Corozal, Puerto Rico, trasmite por título de venta judicial y enajenación a favor del otro compareciente, COOPERATIVA DE AHORRO Y CREDITO LA SAGRADA FAMILIA, la finca descrita en el Inciso SEGUNDO de esta escritura, con todas sus pertenencias y cuanto la constituye, realizándose la venta por el precio de OCHO MIL SEISCIENTOS TREINTA DOLARES CON DIECISEIS CENTAVOS ($8,630.16) *que fue la mejor oferta que se hizo en el acto de la subasta, no existiendo transferencia de dinero por ser el importe del montante de la sentencia a favor del adjudicatario,* quedando de este modo *consumada la venta.* (Énfasis suplido.)

Así las cosas, el 16 de mayo de 1995 la Cooperativa presentó para su inscripción la referida escritura de traspaso y venta judicial ante el Registro de la Propiedad, Sección de Barranquitas.

El 12 de enero de 1996 el Registrador de la Propiedad (Registrador) hizo la calificación correspondiente y notificó las faltas que impedían la inscripción de la referida escritura. Concretamente, señaló las faltas siguientes: (1) que no se acompañó a la escritura copia debidamente certificada de la sentencia, la orden, el mandamiento de ejecución, los edictos, la declaración jurada de la publicación

de los edictos, el acta de subasta ni de cualquier documento que acreditara la residencia de los demandados, y (2) que tampoco surgía del documento presentado que se hubiese inutilizado y/o cancelado el pagaré que es objeto de la garantía hipotecaria.

El 5 de marzo de 1996 la Cooperativa sometió ante el Registro de la Propiedad los documentos que le habían sido requeridos.

El 8 de marzo de 1996 el Registrador nuevamente le notificó al presentante las fallas que impedían la inscripción de la escritura.(¹) Los fundamentos aducidos esta vez por el Registrador disponían lo siguiente:

> (1) deberá acompañar como documento complementario copia certificada del Aviso de Subasta; y,
>
> 2) el acta de subasta hace constar que a la primera subasta no compareció licitador alguno. De conformidad con el Art. 221 de la Ley Hipotecaria, cuando no hay remate ni adjudicación por no existir postor alguno, hay que declarar desierta la misma y celebrar una segunda subasta, y si se declara esta última desierta, efectuar una tercera. Es cuando esta tercera subasta se declare desierta que se dará por terminado el procedimiento, pudiendo adjudicarse el acreedor la finca dentro de los diez (10) días siguientes, si así lo estimare conveniente, por la totalidad de la cantidad adeudada si ésta fuera igual o menor que el monto del tipo de la tercera subasta, y abonándose dicho monto a la cantidad adeudada si ésta fuera mayor.

Inconforme con dicha determinación, el 25 de marzo de 1996 la Cooperativa presentó un escrito de recalificación. El 28 de marzo de 1996 el Registrador ratificó su calificación anterior.

El 3 de abril de 1996 la Cooperativa presentó una solicitud de recurso gubernativo ante nos en la cual solicitó la

---

(¹) Adviértase que esta segunda notificación fue efectuada dentro del término de sesenta (60) días, contados a partir de la primera notificación, según lo permite los Arts. 69 y 52 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2272 y 2255, respectivamente. Véanse, además: *U.S.I. Properties, Inc. v. Registrador*, 124 D.P.R. 448 (1989) y los Arts. 81.2, 81.9 y 81.10 del Reglamento General para la Ejecución de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. secs. 2003–81.2, 2003–81.9 y 2003–81.10, edición especial.

revocación de la decisión del Registrador. A tales efectos, la Cooperativa alegó que en el escrito de recalificación había anejado la copia certificada del Aviso de Subasta que le fuera requerida. Por otro lado, en cuanto a la segunda falta imputada, sostuvo que la propia acta de subasta otorgada pone de manifiesto su comparecencia ante dicho procedimiento, por lo que había incidido el Registrador al denegar la inscripción del documento bajo el fundamento de que a la primera subasta no compareció licitador alguno. Además, adujo que al Registrador le está vedado examinar la legalidad de los documentos expedidos por autoridad judicial, en este caso, la escritura de traspaso y venta judicial.

Oportunamente, el Registrador presentó ante nos su contestación al alegato sometido por la Cooperativa. Solicitó que obviáramos la primera falta notificada. Respecto a la segunda falta, sostuvo que debió especificarse inequívocamente en el acta de subasta, la postura ofrecida por la Cooperativa en calidad de licitador, si ese fue el caso. Arguyó que en ausencia de esa postura no podía adjudicarse el bien inmueble en favor del acreedor en la primera subasta ya que la Ley Hipotecaria y del Registro de la Propiedad faculta ese tipo de adjudicación cuando sea celebrada una tercera subasta y ésta se declare desierta. Por último, el Registrador alegó que el documento, cuya calificación se solicita, no reviste el carácter de uno expedido por autoridad judicial por el solo hecho de haber sido otorgado por un funcionario del tribunal.

Luego de examinar detenidamente los documentos que obran ante nos, y vista las comparecencias de ambas partes, nos encontramos en posición de resolver.

## III

El Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2721, dispone que:

La subasta se celebrará el día, hora y sitio indicado en el

edicto, ante el alguacil que actúe ante la Sala del Tribunal Superior ....

Servirá de tipo para la subasta en este procedimiento el precio en que hayan tasado la finca los contratantes en la escritura de constitución de hipoteca y no se admitirá oferta alguna inferior a dicho tipo. Si no produjere remate ni adjudicación la primera subasta, en la segunda que se celebrare servirá de tipo las dos terceras (2/3) partes del precio pactado. Si tampoco hubiere remate ni adjudicación en la segunda subasta, regirá como tipo de la tercera subasta la mitad del precio pactado.

*Si se declarase desierta la tercera subasta se dará por terminado el procedimiento, pudiendo adjudicarse al acreedor la finca dentro de los diez (10) días siguientes, si así lo estimare conveniente, por la totalidad de la cantidad adeudada si ésta fuere igual o menor que el monto del tipo de la tercera subasta y abonándose dicho monto a la cantidad adeudada si ésta fuere mayor. ...* (Énfasis suplido.)

■ Por otro lado, el Art. 222 de la referida ley, 30 L.P.R.A. sec. 2722, establece, en lo pertinente, que "[e]l acreedor ejecutante podrá concurrir *como postor a todas las subastas*", en cuyo caso, "de obtener la buena pro en el remate, se le abonará total o parcialmente, el importe de su crédito al precio ofrecido por él". (Énfasis suplido.)

■ De acuerdo con la Regla 51.8(d) de Procedimiento Civil, 32 L.P.R.A. Ap. III, y cónsono con los preceptos anteriores, una vez "[v]erificada la venta, [el alguacil] levantará un acta por escrito describiendo lo acontecido durante la subasta y la adjudicación en venta al *mejor postor*, quien pagará el importe de la venta en dinero efectivo o en cheque certificado a la orden del oficial en cuestión".

A poco se examine el texto de las disposiciones antes citadas, podrá apreciarse que todas ellas aluden al acreedor ejecutante, como una de las personas en favor de la cual se puede adjudicar en venta el bien inmueble que sea objeto de ejecución. No obstante, cómo y cuándo dicho acreedor puede ser partícipe de ese derecho, dependerá en gran medida del carácter y modo de su comparecencia a la subasta.

■ Por un lado, según el citado Art. 222, el acree-

dor podrá fungir en todas las subastas como un mero lici-
tador o postor, en cuyo caso, la buena pro en su favor de-
penderá de la oferta o postura que realice.(²) Bajo este
supuesto, lo único que distingue al acreedor de los demás
licitadores es que el primero puede utilizar su crédito como
pago parcial o total de la oferta, en caso de que su postura
resulte ser la ganadora. La utilización de su crédito, como
medio de pago de la oferta, no exime al acreedor rematante
de tener que igualar o superar el tipo mínimo establecido
en la escritura de constitución de hipoteca. Nótese que el
propósito perseguido al requerir el establecimiento de di-
cho tipo mínimo fue precisamente el de "cerrar la puerta a
la grave injusticia que representa la adquisición por el
acreedor de la finca hipotecada mediante oferta en subasta
de parte del crédito adeudado, adjudicándose el inmueble
por precio irrisorio y libre para perseguir otros bienes de su
deudor por el balance impagado de su crédito". *Junta Re-
tiro Maestros v. Registrador*, 109 D.P.R. 569, 571 (1980);
*Ponce Federal Savings v. Gómez*, 108 D.P.R. 585 (1979). Así
mismo, una vez concluida la subasta, tanto el licitador co-
mún como el acreedor rematante que obtengan la buena
pro tienen la obligación de satisfacer el importe de su
oferta en el acto. El hecho de que el acreedor rematante
tenga la oportunidad de satisfacer la totalidad o parte de la
oferta con su crédito, no quiere decir que no tenga que
pagar el remanente adeudado en el acto de subasta, tal
como se le exige a los demás postores.

Así lo reconocen varios tratadistas y comentaristas es-
pañoles al interpretar la legislación española análoga a la
nuestra. Por ejemplo, Manuel González-Alegre señala que:

> ... Tan pronto como en cualquiera de las subastas exista un
> postor aceptable y definitivo, el Juez, en el mismo acto de la

---

(²) "Se llaman [ofertas o posturas] a las proposiciones de precio de compra que
hacen los diferentes licitadores o postores en subasta ." *Ponce Federal v. Arblas Inds.
Supp., Inc.*, 132 D.P.R. 687, 690 (1993), citando a L. Muñoz Morales, *Lecciones de
Derecho Hipotecario*, Río Piedras, Junta Editora de la U.P.R., 1946, T. II, pág. 227.

subasta y en el acta que se levante con el resultado ofrecido, acordará aprobar el remate y se requerirá al adquirente ... consigne la diferencia entre lo depositado para tomar parte en la subasta y el total precio de aquél. ... Lo mismo se hará cuando se adjudique la finca al actor y el importe de su crédito e intereses asegurados por la hipoteca sea inferior al fijado como tipo para la subasta.

Si ... no consignare el rematante el complemento del precio, ... se declarará sin efecto el remate y se reproducirá la subasta celebrada. ... *En el caso de ser el mismo acreedor ejecutante, el rematante o adjudicatario, y de no consignar la diferencia entre el precio del remate o adjudicación y el importe del crédito y de los intereses asegurados con la hipoteca, ... se declarará también sin efecto el remate.* (Énfasis suplido.) M. González-Alegre Bernardo, *Los procedimientos judiciales de la Ley Hipotecaria*, 3ra ed. rev., Barcelona, Ed. Bosch, 1958, págs. 106–107. Así lo entienden también: B. Camy Sánchez-Cañete, *Comentarios a la Legislación Hipotecaria*, 3ra ed., Pamplona, Ed. Aranzadi, 1983, Vol. VI, pág. 737; F. Barrachina y Pastor, *Derecho Hipotecario Notarial*, Castellón, Establecimiento tipográfico de J. Armegot e Hijos, 1911, T. III, pág. 174; R. Roca-Sastre y L. Roca-Sastre, *Derecho Hipotecario*, 7ma ed., Barcelona, Ed. Bosch, 1979, T. IV, Vol. 2, pág. 1139; J. Puig Brutau, *Fundamentos de Derecho Civil*, 3ra ed., Barcelona, Ed. Bosch, 1984, T. III, Vol. III, pág. 223; F. Puig Peña, *Tratado de Derecho Civil español*, 2da ed., Madrid, Ed. Rev. Der. Privado, 1974, T. III, Vol. II.

■ Más aún, el Art. 223 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2723, expresamente dispone que la adjudicación de la buena pro no surtirá efecto jurídico alguno si el postor a quien se le haya adjudicado se niega a pagar el importe de su oferta. Según este precepto, en esos casos el alguacil podrá subastar de nuevo la propiedad en el mismo acto de subasta. A tales efectos, en *Banco Gub. de Fomento v. Abarca Warehouses*, 109 D.P.R. 132, 135 (1979), establecimos que cuando un licitador se niega a pagar el importe de su postura después de habérsele adjudicado la buena pro, el alguacil tiene la facultad para promover otra subasta o para en el mismo acto de subasta tener por no hecha la oferta y adjudicar los bienes al que le siga en cuantía.

En síntesis, resulta meridianamente claro que el acreedor ejecutante que interese comparecer a cualquiera de las subastas en calidad de postor deberá: (1) participar en la puja del inmueble mediante la proposición de una oferta, tal como lo haría cualquier licitador; (2) igualar o superar con su oferta el tipo mínimo establecido, y (3) en caso de obtener la buena pro, satisfacer la diferencia entre la postura ofrecida y el importe de su crédito más los intereses.

Si el acreedor no cumple con el primer requisito, se entenderá que no ejerció su derecho a participar en la subasta como postor y no podrá ser considerado como tal. Si el importe ofrecido no iguala o excede el tipo mínimo, al postor no le podrá ser adjudicada la buena pro. Si a pesar de comparecer expresamente como postor, mediante una oferta que iguale o exceda el tipo mínimo, no pagara el remanente adeudado en el acto de subasta, se tendrá sin efecto el remate que le concedió la buena pro y se podrá celebrar una nueva subasta.

Por otro lado, si el acreedor no interesa comparecer a la subasta en calidad de postor, éste tiene aun la oportunidad de recobrar su crédito mediante la adjudicación en su favor del bien inmueble, a tenor con el Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. En consonancia con ese articulado, el acreedor podrá hacer suya la propiedad, sin tener que ofrecer una postura en los actos de subasta, si al concluir *la tercera subasta*, ella se declarara desierta. Por este medio, al acreedor se le ofrece la prerrogativa de participar en la ejecución del inmueble, no como otro postor o rematante, sino como un mero adjudicatario. Para ejercer esta prerrogativa, el acreedor deberá solicitar la adjudicación del inmueble dentro de los diez días siguientes a la celebración de la tercera subasta. Del texto del citado artículo 221 surge con meridiana claridad que de la única manera en que el acreedor ejecutante puede obtener la adjudicación

del inmueble sin licitar es, si luego de celebrada la tercera subasta, ésta se declara desierta. Con anterioridad a este suceso, o sea, durante la celebración de la primera, segunda y tercera subasta, el acreedor ejecutante sólo puede tomar parte activa como postor y no como adjudicatario, siempre que cumpla a cabalidad con cada uno de los requisitos antes mencionados, a saber: (1) la puja, y (2) el pago del remanente.

En cualquiera de las dos instancias, sea que se adjudique el inmueble en favor de un postor o al acreedor como adjudicatario, es deber insoslayable del alguacil levantar un acta de subasta que refleje clara y fielmente lo acontecido en ella. Entre otras cosas, el alguacil deberá hacer constar la fecha, la hora, el sitio y la forma en que se celebró la subasta; los licitadores que intervinieron; las ofertas que se hicieron hasta llegar a la venta o adjudicación de los bienes; una enumeración y relación de los bienes, y cualquier otro particular que a su juicio debe figurar en el acto de subasta. Art. 223 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*. El acta así preparada es el medio más fidedigno para verificar lo que realmente aconteció en la subasta y los pormenores de la venta como fue efectuada. *Zayas v. El Registrador de Caguas*, 28 D.P.R. 116, 118 (1920).

Una vez preparada la referida acta y adjudicada la propiedad, el alguacil debe proceder entonces a otorgar una escritura pública de traspaso en favor del rematante o del adjudicatario. Véanse: Regla 51.8 de Procedimiento Civil, *supra*, para el procedimiento ordinario de ejecución, y Art. 230 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2730, para el procedimiento sumario. Esta escritura, contrario al acta de subasta, no tiene el propósito de reflejar lo acontecido en la subasta, sino que se otorga con el único fin de transferir el título de propiedad.

# IV

En el caso del epígrafe, es un hecho establecido que el acta de subasta redactada no indicaba en qué capacidad compareció la Cooperativa. En ella, el alguacil se limitó a señalar que la Cooperativa era parte demandante y que se le adjudicaba la propiedad ante la falta de licitador particular. Evidentemente, esto por sí solo no resulta suficiente para poder concluir que la Cooperativa actuó en calidad de postor en la subasta. Más aún, del acta de subasta tampoco se desprende qué oferta, si alguna, realizó la Cooperativa para obtener la buena pro. Nótese que la Cooperativa podía ofrecer el importe de su crédito como parte de una oferta, pero éste no era suficiente para cubrir en su totalidad el tipo mínimo pactado para la primera subasta. La sentencia condenó a los demandados a pagar $5,202.57 de principal más $2,139.80 de intereses hasta el 7 de junio de 1994, más $863.02 para costas, gastos y honorarios de abogado, para un total de $8,205.39, mientras que el tipo mínimo establecido ascendía a $8,630.16. Ante estas circunstancias, como único el alguacil podía adjudicar la propiedad en favor de la Cooperativa era si ésta, con posterioridad a la correspondiente puja, pagaba en el acto de subasta la diferencia entre el importe de su crédito y el tipo mínimo establecido; esto es, la cantidad de $424.77.

Por otro lado, la Cooperativa tampoco podía ejercer su facultad como adjudicataria, a tenor con el Art. 221 de la Ley Hipotecaria y del Registro de la Propiedad, *supra*, ya que, como claramente dispone el texto de la ley, ello sólo puede realizarse dentro de los diez (10) días siguientes a que se haya declarado desierta la tercera subasta. En este caso, por tratarse de la primera subasta, la Cooperativa únicamente podía comparecer en calidad de postor, siendo necesario que participara en la puja y que, de obtener la buena pro, pagara el remanente adeudado, cosa que no hizo.

Asimismo, es menester señalar que en la escritura de traspaso no podía hacerse constar que el importe del crédito de la Cooperativa fue la mejor oferta que se hizo en la subasta, si el acta de ésta no reflejaba dicho hecho; sobre todo cuando la supuesta oferta realizada era por una cantidad menor que el tipo mínimo requerido, y no constaba en el acta que esa diferencia fuese pagada en el acto.

Igualmente, en el caso de epígrafe no cabe la menor duda de que, contrario a lo alegado por la Cooperativa, la escritura de traspaso que calificó el Registrador no es un documento expedido por una autoridad judicial. Nótese que desde *C.R.U.V. v. Registrador*, 117 D.P.R. 662, 667 (1986), reconocimos que una escritura pública de compraventa judicial en ejecución de sentencia no puede ser catalogada como un documento expedido por autoridad judicial, por el simple hecho de que un alguacil comparezca como parte a su otorgamiento, en carácter oficial. Véase, además, *Atanacia Corp. v. J.M. Saldaña, Inc.*, 133 D.P.R. 284 (1993). La escritura, así otorgada, no pierde su carácter de documento notarial por la mera comparecencia de un funcionario judicial. Como tal debe ser calificada, y el Registrador puede examinar, a tono con el Art. 64 de la Ley Hipotecaria y del Registro de la Propiedad, 30 L.P.R.A. sec. 2267, como en cualquier documento notarial, "las formas extrínsecas de los documentos presentados, la capacidad de los otorgantes y la validez de los actos y contratos contenidos en tales documentos". En el caso de autos, tal como expresáramos anteriormente, el Registrador no erró al calificar y denegar la inscripción de dicho documento. De éste se desprendía claramente que la Cooperativa no había cumplido con las exigencias requeridas por la Ley Hipotecaria y del Registro de la Propiedad y por las Reglas de Procedimiento Civil para obtener la buena pro como postor.

En materia de venta judicial no existe presunción en favor de que el alguacil lo ha hecho todo de forma adecuada. Por lo cual, incumbe al que compra demostrarle

al Registrador que, mediante documento auténtico, se ha observado la ley. *C.R.U.V. v. Registrador*, supra, pág. 669; *Manrique v. Registrador*, 33 D.P.R. 544, 547 (1924); *Orcasitas v. El Registrador*, 21 D.P.R. 553, 556 (1914). Como en el caso de autos la Cooperativa no logró probar la legalidad del acto, resolvemos que el Registrador actuó correctamente al denegar la inscripción en cuestión.

Por último, es menester considerar que en la sociedad en que vivimos es sumamente necesario proteger la integridad de los procedimientos de ejecución y de la venta de bienes hipotecados. De otro modo, los intereses de aquéllos con menos recursos pueden quedar a merced de las compañías que ofrecen préstamos garantizados por pagarés hipotecarios que, de ordinario, cuentan con todos los medios necesarios para cobrar su acreencia. Precisamente por ello, la Legislatura estableció el esquema jurídico aludido en esta opinión, el cual podría ser catalogado como rígido y estricto; pero que procura así que los prestatarios gocen, al menos, de ciertas garantías de ley, que hagan posible el máximo rendimiento de sus propiedades hipotecadas, en caso de ejecución. Corresponde a los tribunales asegurar dicha protección mediante el fiel cumplimiento de la ley.

Por los fundamentos expuestos, *se dictará sentencia que confirme la resolución recurrida*.

El Juez Asociado Señor Rebollo López concurrió con el resultado sin opinión escrita.