

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Banco Popular de Puerto Rico<br><br>Peticionario<br><br>v.<br><br>Registrador de la Propiedad<br>Sección Primera de Caguas;<br>Hon. Richard F. Keeler Vázquez<br><br>Recurrida | 2011 TSPR 58<br><br><br>181 DPR _____ |

Número del Caso: RG - 2007 - 3

Fecha: 11 de abril de 2011

Abogada de la Parte Peticionaria:

Lcda. Alondra M. Fraga Meléndez

Abogado de la Parte Recurrida:

Por derecho propio

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Banco Popular de Puerto Rico

     Peticionario

         v.                  RG-2007-3     Recurso Gubernativo

Registrador de la Propiedad,
Sección Primera de Caguas;
Hon. Richard F. Keeler Vázquez

     Recurrido



Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo


En San Juan, Puerto Rico, a 11 de abril de 2011.

La controversia que hoy atendemos requiere que determinemos si las escrituras públicas de venta judicial que otorga un acreedor cuando comparece como licitador a la subasta y se lleva la buena pro están incluidas en el término de compraventa dispuesto en la Ley Núm. 244, *supra*, para los efectos de cancelar sellos a favor de la Sociedad de Asistencia Legal. Examinada, la controversia antes descrita a la luz de la normativa aplicable resolvemos en la afirmativa.

I.

El 19 de diciembre de 2003, el Tribunal de Primera Instancia emitió una sentencia en rebeldía sobre una demanda de cobro de dinero y ejecución de hipoteca presentada por el Banco Popular de Puerto Rico (Banco Popular). En la sentencia, el foro primario condenó a Carmen Julia Rivera Maldonado y a Juan Torres Rivera (demandados) a pagar solidariamente al Banco Popular la suma principal de $689,130.61 y otras sumas de dinero relacionadas al contrato de préstamo hipotecario objeto de la demanda, el cual estaba garantizado con una propiedad descrita como finca rústica.[1]

Debido a que la sentencia antes mencionada no fue satisfecha por los demandados, el 24 de mayo de 2004, el tribunal de instancia emitió una Orden en la que declaró ha lugar una moción de Ejecución de Sentencia presentada por el Banco Popular. Así, ordenó a la Secretaria del Tribunal a expedir un mandamiento dirigido al alguacil para que procediera con la ejecución de la sentencia y vendiera en pública subasta la propiedad que se describe en ella. En cumplimiento con la Orden de Ejecución de Sentencia del

---

[1] Las otras sumas de dinero que Carmen Julia Rivera Maldonado y a Juan Torres Rivera debían pagar solidariamente son las siguientes:

7% de interés anual sobre el principal desde el 1 de diciembre de 2001 hasta su total pago; $113.83 mensuales por seguros contra riesgos; $230.19 mensuales por recargos por demora desde el 1 de enero de 2002 hasta su total pago y hasta la cantidad líquida y estipulada de $69,200.00 para costas, gastos y honorarios de abogados; $1,611.33 por recargos acumulados; y cualquier otra suma que surja del contrato de préstamo hipotecario evidenciado por el pagaré que suscribieron los demandados.

Tribunal de Primera Instancia, la Secretaria de dicho tribunal expidió el mandamiento requerido.

El 4 de octubre de 2004, luego de que se acreditó la publicación de los correspondientes anuncios de subasta en un periódico y en lugares públicos por el término que requiere la ley, se llevó a cabo la venta en pública subasta siendo el tipo mínimo $692,000.00. A la subasta sólo compareció la Lcda. Alondra Fraga Meléndez en representación del Banco Popular quien ofreció los $692,000.00. Como no hubo quien mejorara la oferta, se le adjudicó la buena pro al Banco Popular por la cantidad de $692,000.00 en abono de la deuda adjudicada por el Tribunal de Primera Instancia.

Ese mismo día, la alguacil encargada de la subasta, la Sra. Ivonne Benítez López, y el Sr. José David Hernández Dávila —en representación del Banco Popular— otorgaron una escritura de venta judicial [2] (Escritura) ante la notario Alondra Fraga Meléndez mediante la cual la alguacil "vendió, cedió, adjudicó y traspasó" [3] al Banco Popular el inmueble que garantizaba el préstamo hipotecario.

Así las cosas, el 14 de enero de 2005, la Escritura fue presentada en la Sección Primera del Registro de la

---

[2] En el original de la referida Escritura se canceló la suma de $694.00 en derechos ($693.00 en sellos de Rentas Internas más $1.00 por el sello notarial) y en la copia certificada que sería enviada al Registro de la Propiedad se canceló la suma de $3,076.00 ($346.50 en sellos de Rentas Internas, $1.00 por el sello notarial, 2,718.00 por el comprobante de inscripción, $10.00 por el comprobante de presentación y $.50 por el sello de Rentas Internas para la presentación en el Registro).

[3] Según surge de la "Escritura de Venta Judicial, Número 77", en la cláusula cuarta.

Propiedad de Caguas. El 30 de marzo de 2007, el Registrador de la Propiedad de Caguas I, Hon. Richard F. Keeler Vázquez (Registrador), notificó faltas en la Escritura, por lo que no la inscribió. Indicó el Registrador que para completar los derechos de inscripción el Banco Popular necesitaba pagar $35.00 en sellos a favor de la Sociedad para Asistencia Legal (Asistencia Legal). Además, señaló el Registrador que "la propiedad está afecta a dos hipotecas posteriores (Gravámenes) y no se expresa destino final de las mismas o si dicho acreedores fueron notificados (Emplazados)".

Inconforme con dicha interpretación, el 12 de abril de 2007, el Banco Popular remitió un escrito de recalificación en el que rebatió los señalamientos del Registrador. El Banco Popular entendió que de acuerdo a la Ley Núm. 244 de 2 de septiembre de 2004, la cual enmendó la Ley Núm. 101 de 12 de mayo de 1943, 4 L.P.R.A. sec. 851, la obligación del notario de cancelar sellos de Asistencia Legal corresponde en escrituras de compraventa, compraventa e hipoteca y constitución o cancelación de hipoteca; no a escrituras de ventas judiciales por ser éstas distinguibles de la compraventa. Asimismo, añadió respecto a los gravámenes posteriores señalados por el Registrador, que el Tribunal de Primera Instancia le había ordenado al Registrador de la Propiedad que cancelara en los libros a su cargo "la hipoteca de $36,500.00 y la de $27,000.00 que fueron presentadas al Asiento 254 del Diario 1084 y al

Asiento 245 del Diario 1057".[4] Finalmente, el Banco Popular volvió a solicitar la inscripción de la Escritura.

El 11 de mayo de 2007, el Registrador nuevamente notificó faltas que impedían la registración de la Escritura. En síntesis, el Registrador señaló que faltaban los sellos de Asistencia Legal por la cantidad de $35.00 "para proceder con la cancelación del pagaré, según el Banco Popular había solicitado en la [Escritura]". Además, le solicitó al Banco Popular la copia certificada del pagaré ya que ésta no se había acompañado como documento complementario. Aún inconforme, el 18 de mayo de 2007, el Banco Popular presentó un segundo escrito de recalificación en el que reiteró su posición en cuanto a que una escritura de venta judicial no cancela sellos de Asistencia Legal y alegó que la cancelación del pagaré es un derecho inherente al otorgamiento de la venta judicial y no depende del pago de esos sellos. En cuanto al segundo señalamiento, el Banco Popular envió una copia certificada del pagaré, pero aclaró que ya lo había enviado junto a la copia certificada de la Escritura que había presentado en el Registro de la Propiedad el 14 de enero de 2005.

El 29 de junio de 2007, el Registrador notificó una Calificación denegatoria final por los mismos fundamentos que antes había expresado, pues entendió que el escrito de recalificación del Banco Popular no corrigió los errores señalados en la notificación anterior. En desacuerdo con

---

[4] El Banco Popular le indicó al Registrador que esa información constaba en el Asiento 453 del Diario 1131 de 14 de febrero de 2007.

la calificación del Registrador, el 17 de julio de 2007, el Banco Popular acudió ante este Tribunal mediante un Recurso Gubernativo en el que hizo el siguiente señalamiento de objeción a la calificación:

> Erró el Honorable Registrador de la Propiedad de Caguas, Sección I, al denegar la inscripción de la "Escritura de Venta Judicial" Número 77.

El Banco Popular argumentó que la Ley Núm. 244, *supra*, no le es de aplicación a la escritura de venta judicial debido a que no es uno de los instrumentos públicos que se mencionan en la ley antes citada. Por su parte, el Registrador presentó un escrito en contestación al Recurso Gubernativo en el que aclaró que la única falta notificada al Banco Popular sin subsanar era la falta de sellos a favor de la Sociedad para Asistencia Legal por la cantidad de $35.00 para proceder entonces a cancelar el pagaré. Concluyó el Registrador que la venta judicial es una compraventa en todo su concepto legal por lo que le es de aplicación a las escrituras de ventas judiciales lo dispuesto en la Ley Núm. 244, *supra*, sobre el deber del notario de cancelar sellos a favor de la Sociedad para Asistencia Legal. Asimismo, notificó que se canceló la hipoteca objeto de la "Compraventa Judicial". Con el beneficio de conocer la posición de ambas partes, el 2 de octubre de 2007, el caso de epígrafe quedó sometido ante nuestra consideración. Veamos la normativa aplicable a la controversia que hoy nos ocupa.

II

A

La Ley Núm. 244 de 2 de septiembre de 2004 añadió un inciso (2) a lo dispuesto en la Ley Núm. 101 de 12 de mayo de 1943, 4 L.P.R.A. sec. 851, según enmendada, sobre el deber del notario de cancelar sellos a favor de la Sociedad para Asistencia Legal. En la *Exposición de Motivos* de la citada Ley Núm. 244, *supra*, el legislador señaló que el propósito de dicha ley era aumentar los ingresos de la Sociedad para Asistencia Legal pues ésta enfrentaba un déficit operacional que le impedía cumplir cabalmente con sus compromisos. Como es conocido por muchos, la Sociedad para Asistencia Legal tiene como misión proveer representación legal a personas indigentes imputadas de delitos.[5] Para lograr paliar dicho déficit, a través de la Ley Núm. 244, *supra*, el legislador impuso un nuevo arancel "a cancelarse en todas las escrituras públicas de compraventa que se otorguen ante notario debidamente autorizado y registrado a favor de la Sociedad para la Asistencia Legal". Dicho inciso establece que:

> Además del cobro de derechos que se establece en el inciso (1), en cada documento de escritura de compraventa, compraventa e hipoteca, constitución o cancelación de hipoteca, que haya de ser protocolizado y por cada copia de estas, se fijarán y cancelarán además sellos, que la Sociedad para Asistencia Legal adoptará y expedirá, por valor de cinco dólares ($5) en el original y dos dólares con cincuenta centavos ($2.50) por cada copia, cuando la cuantía del

---

[5] Sociedad para Asistencia Legal de Puerto Rico, Misión. (Disponible en: http://www.salpr.org/about/)(Accedido en febrero de 2011.)

documento sea entre veinticinco mil dólares ($25,000) y cincuenta mil dólares ($50,000). Cuando la cuantía del documento exceda de cincuenta mil dólares ($50,000) se fijarán y cancelarán sellos adicionales, de cinco dólares ($5) en el original y dos dólares con cincuenta centavos ($2.50) en toda copia, por cada cincuenta mil dólares ($50,000) o fracción subsiguiente. No existirá la obligación de de cancelar sellos a favor de la Sociedad para Asistencia Legal aquí establecidos en aquellos casos en que la cuantía sea menor de veinticinco mil dólares ($25,000), ni cuando por disposición de ley se exima el cancelar sellos de Rentas Internas y el arancel notarial. Se faculta al Secretario de Hacienda a adoptar y expedir electrónicamente sellos para la Sociedad de Asistencia Legal que servirán los propósitos establecidos en esta sección, y a vender los mismos de conformidad con las disposiciones de las secs. 896 a 899 de este título. (Subrayado nuestro.)

Es decir, según el texto antes citado, se cancelarán sellos a favor de la Sociedad para Asistencia Legal en las escrituras de compraventa, compraventa e hipoteca, y en las de constitución o cancelación de hipotecas. No obstante, estarán exentos de pagar los referidos sellos en aquellos casos en que la cuantía sea menor de $25,000.00, o cuando por disposición de ley se exima de cancelar sellos de Rentas Internas y el arancel notarial.

B

Ahora bien, en cuanto al contrato de compraventa, el artículo 1334 del Código Civil, 31 L.P.R.A. sec. 3741, nos lo define de la siguiente manera:

Por el contrato de compra y venta uno de los contratantes se obliga a entregar una cosa determinada y el otro a pagar por ella un precio cierto, en dinero o signo que lo represente.

Puig Brutau define el contrato de compraventa como "un contrato por el cual una parte transmite o se obliga a transmitir una cosa o derecho a la otra parte, a cambio de que ésta le pague un precio en dinero".[6] Así, este contrato se forma cuando las partes contratantes logran acuerdo en cuanto a la cosa y el precio[7] siendo estos últimos los elementos objetivos o reales de dicho contrato.[8] También, el contrato de compraventa es consensual[9] y aunque el consentimiento no necesita forma, el contrato de compraventa de bienes inmuebles tiene que constar en escritura pública para poderse inscribir en el Registro.[10]

Además, el contrato de compraventa debe cumplir con los requisitos esenciales para la validez de los contratos en general. Estos son: consentimiento de los contratantes, objeto cierto que sea materia del contrato, y causa de la obligación que se establezca.[11] Así, el consentimiento "se manifiesta por el concurso de la oferta y de la aceptación de sobre la cosa y la causa que han de constituir el contrato".[12] De otro lado, el objeto de una compraventa

---

[6] Puig Brutau, <u>Fundamentos de Derecho Civil</u>, Tomo II, vol. II, 2da ed., Contratos en Particular, Bosch, Casa Editorial, S. A. – Urgel, 51 bis – Barcelona, pág. 119.

[7] Vélez Torres, <u>Curso de Derecho Civil</u>, Tomo IV, vol. II, Derecho de Contratos, pág. 160; 31 L.P.R.A. sec. 3746.

[8] Puig Brutau, <u>op. cit.</u>, pág. 135.

[9] Diez-Picazo y Gullón, <u>Sistema de Derecho Civil</u>, vol. II, 6ta ed., pág. 279.

[10] 31 L.P.R.A. sec. 3453.

[11] 31 L.P.R.A. sec. 3391.

[12] 31 L.P.R.A. sec. 3401.

puede ser cosas corporales, incorporales o de cosa futura siempre que recaiga en una cosa determinada en su especie y que se encuentre dentro del comercio de las personas.[13] En cuanto a la causa de los contratos onerosos -como lo es el de compraventa- se entiende que es la "prestación o promesa de una cosa o servicio por la otra parte".[14]

C

De otra parte, sólo pueden ser objeto del contrato de hipoteca los bienes inmuebles y los derechos reales enajenables de acuerdo a las leyes, "impuestos sobre bienes de aquella clase".[15] La hipoteca es un derecho real que sujeta o vincula lo hipotecado a que eventualmente su titular pueda exigir la realización de su valor, así como tomar medidas para salvaguardarlo, en seguridad o garantía de la efectividad de alguna obligación dineraria.[16] Así, la hipoteca se define por ser "de carácter accesorio, indivisible, de constitución registral, y grava bienes inmuebles, ajenos y enajenables, que permanecen en posesión de su propietario o titular".[17] Debido a que la hipoteca es un derecho real de "realización de valor", el titular de éste tiene la facultad de exigir la enajenación de la cosa

_____

[13] Diez-Picazo y Gullón, Sistema de Derecho Civil, vol. II, 6ta ed., pág. 283-284; 31 L.P.R.A. sec. 3421 y 3423.

[14] 31 L.P.R.A. sec. 3431.

[15] 31 L.P.R.A. sec. 5041.

[16] Rivera Rivera, Derecho Registral Inmobiliario Puertorriqueño, 2da ed., Jurídica Editores 2002, pág. 481; 31 L.P.R.A. sec. 5043.

[17] Id. en las págs. 113-114.

que se dio en garantía para recobrar lo adeudado. Así lo dispone el Artículo 1757 del Código Civil cuando expresa que "vencida la obligación principal, puedan ser enajenadas las cosas en que consiste la prenda o hipoteca para pagar al acreedor", y a esto consintió el deudor cuando otorgó el contrato de hipoteca. Por lo tanto, ante la realidad de que una hipoteca trae consigo la posibilidad de que en caso de que el deudor incumpla con su obligación surja una venta en pública subasta del bien hipotecado, es necesario que quien constituya una hipoteca sobre sus bienes tenga la libre disposición de estos.[18]

En cuanto a los mecanismos de ejecución hipotecaria, "a pesar de su importancia y frecuente uso, no ha sido sencillo precisar su naturaleza".[19] No obstante lo anterior, encontramos estos procesos regulados por la Ley Hipotecaria[20], las Reglas de Procedimiento Civil[21] y el Código Civil de Puerto Rico[22]. Así, el Artículo 221 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2721, establece que la subasta se celebrará el día, hora y sitio que indique el edicto ante un alguacil del Tribunal de Primera Instancia. Asimismo, el citado Artículo 221, *supra*, indica que el

---

[18] Id., en las págs. 494-495.

[19] Smyth, Puig v. Oriental Bank, 170 D.P.R. 73, 91-92 (2007). (Resolución) (Voto disidente Juez Rodríguez Rodríguez).

[20] Véase, 30 L.P.R.A. sec. 2701-2735.

[21] Véase, Regla 51.3 y 51.8 de las de Procedimiento Civil de 1979. 32 L.P.R.A. Ap. III R. 51.3 y 51.8.

[22] Respecto a la venta judicial. 31 L.P.R.A. secs. 3831-3846a.

precio en que hayan tasado la finca al momento de constituir la hipoteca servirá de tipo mínimo para la subasta y no se admitirá oferta inferior a dicho tipo. Añade, que si en la primera subasta no se produjere remate ni adjudicación, el tipo mínimo a usarse en la segunda subasta será de 2/3 partes del precio pactado, y la mitad, si hubiese que llegar a una tercera subasta. En caso de que la tercera subasta se declare desierta se dará por terminado el procedimiento y se le adjudicará al acreedor la finca por la totalidad de la deuda si ésta fuere igual o menor que el monto del tipo de la tercera subasta, y se le abonará a la deuda si ésta fuere mayor.[23]

Cónsono con lo anterior, la Regla 51.8 (d) de las de Procedimiento Civil señala en lo pertinente que una vez se verifique la venta, el oficial a cargo de la misma levantará un acta que describa lo acontecido durante la subasta y la adjudicación en venta al mejor postor, "quien pagará el importe de la venta en dinero efectivo o en cheque certificado a la orden del oficial en cuestión". Sin embargo, el Artículo 222 de la Ley Hipotecaria, 30 L.P.R.A. sec. 2722, dispone en lo pertinente que el acreedor ejecutante puede concurrir como postor a todas las subastas si así lo quisiere y, en el caso en que se lleve la buena pro en el remate, se le abonará total o parcialmente el importe de su crédito al precio ofrecido

---

[23] Art. 221 de la Ley Hipotecaria. 30 L.P.R.A. sec. 2721.

por él. Esto último es lo único que distingue al acreedor que comparece a la subasta como licitador de los demás licitadores que comparecen a comprar el inmueble subastado.[24] Respecto a este particular hemos expresado que el hecho de que el acreedor-rematante utilice su crédito como forma de pago no lo exime de "tener que igualar o superar el tipo mínimo establecido en la escritura de constitución de hipoteca".[25] En esencia, tal y como resolvimos en Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 381 (1997), el acreedor ejecutante que comparezca a la subasta en calidad de postor deberá:

1. Participar en la puja del inmueble mediante la proposición de una oferta, tal como lo haría cualquier licitador;
2. igualar o superar con su oferta el tipo mínimo establecido; y
3. en caso de obtener la buena pro, satisfacer la diferencia entre la postura ofrecida y el importe de su crédito más los intereses.

Como es de notar, la Ley Hipotecaria y determinadas Reglas de Procedimiento Civil se encargan del esquema procesal de la ejecución hipotecaria y la venta judicial mientras que la normativa aplicable a las compraventas dispuesta en el Código Civil facilita "la interpretación y a llenar las lagunas del esquema procesal".[26] Precisamente

---

[24] Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 379 (1997).

[25] Id.

[26] Smyth, Puig v. Oriental Bank, 170 D.P.R. 73, 94 (2007). (Resolución) (Voto disidente Juez Rodríguez Rodríguez).

el Artículo 1378,[27] menciona respecto al saneamiento en los contratos de compraventa, que en la venta judicial nunca habrá lugar a responsabilidad por daños y perjuicios pero sí a todo lo demás dispuesto en los Artículos 1363 a 1377[28]. Además, el Artículo 1348 del Código Civil[29] dispone, también en el título de compraventa, acerca de las personas que no pueden adquirir por compra "aunque sea en subasta pública o judicial" así sea por persona intermediaria.

Es importante señalar que el legislador estableció el esquema jurídico a seguir en los procedimientos de ejecución de hipotecas y venta de bienes hipotecados antes descrito, con el propósito de proteger a los deudores dueños de los bienes hipotecados para que en caso de ejecución y venta en pública subasta se le dé el mayor valor posible a sus propiedades.[30] La intención del legislador en cuanto a este particular va de acuerdo con la prohibición dispuesta en el Artículo 1780 del Código Civil[31] sobre el pacto comisorio, en el que se declara nulo el pacto que autorice al acreedor hipotecario adjudicarse la finca del deudor hipotecante al incumplir con el contrato garantizado con hipoteca. De manera que en los casos de ejecución de hipoteca lo que procede es la venta del bien

---

[27] 31 L.P.R.A. sec. 3846.

[28] 31 L.P.R.A. sec. 3831-3845.

[29] 31 L.P.R.A. sec. 3773.

[30] Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 384 (1997).

[31] 31 L.P.R.A. sec. 5048.

inmueble para satisfacer la deuda del acreedor ejecutante. Con el beneficio de la normativa antes expuesta, resolvemos.

III

El presente Recurso Gubernativo plantea una controversia relacionada con los derechos que cancela una escritura de venta judicial al presentarse para inscripción en el Registro de la Propiedad. Específicamente, nos corresponde resolver si la escritura pública de venta judicial que otorga un acreedor ejecutante cuando comparece además como licitador a la subasta, se considera como una de compraventa a los efectos de lo dispuesto en la Ley Núm. 244 de 2 de septiembre de 2004, 4 L.P.R.A. sec. 851, sobre el deber del notario de cancelar sellos a favor de la Sociedad para Asistencia Legal. Examinada la doctrina antes discutida, resolvemos en la afirmativa. Veamos.

En este caso, el Tribunal de Primera Instancia emitió una sentencia en rebeldía sobre una demanda de cobro de dinero y ejecución de hipoteca a favor del Banco Popular de Puerto Rico. Luego de los trámites procesales requeridos para la celebración de la venta del inmueble que garantizaba el préstamo hipotecario prestado por el Banco Popular, éste compareció voluntariamente como licitador a la primera subasta y se llevó la buena pro al dar como precio su crédito. La controversia ante nuestra consideración surge cuando el Banco Popular se propuso

inscribir la "Escritura de Venta Judicial" en el Registro de la Propiedad, Sección I de Caguas. Allí, el Registrador le indicó que faltaba cancelar los sellos a favor de la Sociedad para Asistencia Legal, según lo dispuesto en la Ley Núm. 244, *supra*, por ser la venta judicial "una compraventa en todo su concepto legal". El Banco Popular disintió del razonamiento del Registrador por entender que la venta judicial es distinguible de una compraventa.

Es cierto que la venta judicial ostenta unas características procesales particulares que la distinguen de una compraventa ordinaria, razón por la cual, al referirnos al carácter de la comparecencia del alguacil encargado de la subasta para la realización de los bienes, resolvimos en Banco Gub. de Fomento v. Abarca Warehouse, 109 D.P.R. 132, 134 (1979), que "la venta forzosa judicial carece de la base consensual del contrato de compra y venta definido en el [Artículo] 1334 del Código Civil, 31 L.P.R.A. sec. 3741". No obstante lo anterior, no podemos pasar por alto que en la venta judicial en pública subasta están presentes los dos elementos reales del contrato de compraventa, entiéndase cosa y precio, pues de ordinario, comparece uno o varios compradores a licitar por un bien inmueble a cambio de un precio. En este punto debemos reproducir unas expresiones de Roca Sastre que citamos en el mismo caso de Banco Gubernamental de Fomento v. Abarca Warehouses Corp., *supra*, que leen como sigue:

> El pensamiento del legislador en punto a la naturaleza de la adjudicación al rematante o adjudicatario es ver en ella una especie de compraventa, ya que a veces habla de "venta' y de "precio'. Guasp se opone a esta tesis, por entender que falta el consentimiento del dueño, pero como en definitiva, se produce una transmisión por precio, cabe asimilar en muchos aspectos este acto al contrato de compraventa, sin olvidar que dada la intervención de la justicia en esta realización de bienes ella participa del carácter de un acto estatal, circunstancia que hacen destacar los procesalistas. (Citas omitidas.)(Subrayado nuestro.)

Como mencionamos antes, cuando un acreedor acude a la subasta como licitador lo único que lo distingue de un comprador que comparece a licitar es el crédito que ostenta el acreedor a su favor y que puede usar como parte del precio de la venta.

A su vez, este Tribunal se ha referido indistintamente a la escritura de venta judicial en ejecución de hipoteca como una escritura pública de compraventa judicial.[32] De la misma forma, al referirnos a una subasta pública para cumplir con una orden judicial, en Sobrinos de Ezquiaga v. Corte de Distrito de San Juan, 31 D.P.R. 563 (1923), dijimos que "por medio de la subasta lo que se verifica es simplemente un contrato de compraventa, y el comprador ha de pagar por precio de los bienes, dinero contante o signo que lo represente, según así define dicho contrato el artículo 1348 del Código Civil". Así, "un

---

[32] Véase, por ejemplo, García v. Registrador, 66 DPR 683 (1946); Santiago Alonso v. Registrador, 72 D.P.R. 57 (1951); C.R.U.V. v. Registrador, 117 DPR 662, 667 (1986); Coop. Ahorro y Créd. v. Registrador, 142 D.P.R. 369, 384 (1997).

análisis de nuestra jurisprudencia revela que [los mecanismos de ejecución hipotecaria] se han conceptualizado como instituciones jurídico-procesales inspiradas en el contrato de compraventa".[33]

En definitiva, entendemos que cuando el legislador expresó en la *Exposición de Motivos* de la Ley Núm. 244, *supra*, que en "todas las escrituras públicas de compraventa que se otorguen ante notario debidamente autorizado y registrado" debían cancelarse sellos a favor de la Sociedad para Asistencia Legal, se refería a todos las escrituras públicas que incluyeran la adquisición de bienes inmuebles a título oneroso, es decir, pagando un precio a cambio del bien.

IV

Por los fundamentos antes expuestos, procede la falta notificada por el Registrador de la Propiedad, Sección I de Caguas. El Peticionario debe cancelar los sellos a favor de la Sociedad para Asistencia Legal en la escritura de venta judicial para que el Registrador inscriba la "Escritura de Venta Judicial, Número 77".

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[33] Smyth, Puig v. Oriental Bank, 170 D.P.R. 73, 91-92 (2007). (Resolución) (Voto disidente Juez Rodríguez Rodríguez).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Banco Popular de Puerto Rico

    Peticionario

        v.                    RG-2007-3     Recurso Gubernativo

Registrador de la Propiedad, Sección Primera de Caguas; Hon. Richard F. Keeler Vázquez

    Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 11 de abril de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, procede la falta notificada por el Registrador de la Propiedad, Sección I de Caguas. El Peticionario debe cancelar los sellos a favor de la Sociedad para Asistencia Legal en la escritura de venta judicial para que el Registrador inscriba la "Escritura de Venta Judicial, Número 77".

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con la siguiente expresión:

"La Juez Asociada señora Rodríguez Rodríguez hace constar que conforme el razonamiento expresado en su voto disidente en *Smyth Delgado v. Oriental Bank* 170 D.P.R. 73 (2007) procede cancelar en la escritura de venta judicial, el arancel establecido en la Ley núm. 244 de 2 de septiembre de 2004, a favor de la Sociedad para Asistencia Legal".


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo